# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: ) | Case No. 16-02438-11 |
| ) | |
| **CENTRAL IOWA HEALTHCARE** ) | Chapter 11 |
| ) | |
| Debtor and Debtor in Possession. ) | Hon. |
| ) | |
| 3 South 4th Avenue ) | **DEBTOR'S APPLICATION TO** |
| Marshalltown, IA  50158 ) | **EMPLOY GENERAL** |
| ) | **REORGANIZATION COUNSEL** |
| EIN:  42-0948420 ) | |
| ) | No Hearing Set |

Central Iowa Healthcare ("CIH" or the "Debtor"), Debtor and Debtor in Possession herein, respectfully represents:

1. On December 20, 2016 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code (Docket Item 1).

2. Debtor wishes to retain Jeffrey D. Goetz, Esq. and the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C. (the "Firm") as its General Reorganization Counsel in the Chapter 11 bankruptcy case at the expense of the estate.

3. The Firm is comprised, in part, of attorneys who practice in insolvency and reorganization bankruptcy law, and is qualified to represent the Debtor in proceedings of this nature.  It is anticipated that Jeffrey D. Goetz will be lead counsel and will primarily provide legal services to the Debtor.  All of the attorneys who will appear in this case are duly admitted to practice law in the courts of the State of Iowa and in the United States District Court for the Southern District of Iowa.  Jeffrey D. Goetz is Board-Certified in Business and Consumer Bankruptcy Law by the American Board of Certification.

4. The Firm will render services to the Debtor at the Firm's regular hourly rates. The Firm understands that its compensation is subject to approval of this Court and intends to apply in conformity with Bankruptcy Code Sections 330 and 331 for compensation and reimbursement for fees incurred and costs advanced.

5. The Debtor requires the services of the Firm to render the following types of professional services:

(a) To advise and assist the Debtor with respect to compliance with the requirements of the United States Trustee;

(b) To advise the Debtor regarding matters of Bankruptcy Law, including the rights and remedies of the Debtor with regard to its assets and with respect to the claims of creditors;

(c) To represent the Debtor in any proceedings or hearings in the Bankruptcy Court and in any action in any other court where the Debtor's rights under the Bankruptcy Code may be litigated or affected;

(d) To conduct examinations of witnesses, claimants, or adverse parties and to prepare and assist in the preparation of reports, accounts, and pleadings related to this Chapter 11 case;

(e) To advise the Debtor concerning the requirements of the Bankruptcy Code and applicable rules as the same affect the Debtor in this proceeding;

(f) To assist the Debtor in the negotiation, formulation, confirmation, and implementation of a Chapter 11 Plan;

(g) To make any court appearances on behalf of the Debtor; and

(h) To take such other action and perform such other services as the Debtor may require of the firm in connection with the Chapter 11 case.

6. On September 22, 2016, Ms. Abigail Hillers joined the Bradshaw Law Firm as an associate attorney in its Estate Planning Group. Ms. Hillers was previously employed by United Bank & Trust in Marshalltown, a secured creditor of CIH. Ms. Hillers and the Firm do not

represent United Bank. Additionally, in the past, the Firm represented Iowa Health Systems, prior to its name change to UnityPoint Health, in defense of medical malpractice claims. Currently, the Firm does not represent UnityPoint Health in any cases. The Firm believes that it does not have any interest adverse to the Debtor or its estate as that term is used in Bankruptcy Code Section 327(a). The Firm also believes that it is a disinterested person as that term is defined in Bankruptcy Code Section 101(14).

7. The Debtor and the Firm have entered into a Chapter 11 Legal Services Agreement dated October 26, 2016 and amended December 13, 2016. A copy of the Agreement and the Amendment are attached hereto as Exhibit "A".

8. The Firm received $75,000.00 on November 21, 2016, as a retainer to guaranty payment of its services in the Chapter 11 case. The Firm agreed has been paid $63,001 prior to the Petition Date, and expended $60 in costs prior to the Petition Date. There remains $11,939 in the Bradshaw, Fowler, Proctor & Fairgrave, P.C. Client Trust Account, to be applied to post-petition attorney fees and costs incurred, after application to and upon approval by the Bankruptcy Court.

9. At the conclusion of this case the Firm will file an appropriate final application seeking allowance of all fees and costs, regardless of whether interim compensation has been paid. Upon allowance of such fees and costs, the Debtor will pay the Firm the difference between the amount finally allowed and any interim compensation paid.

10. The Debtor and the Firm understand and agree that the proposed compensation agreement is subject to Bankruptcy Code Section 328 which authorizes this Court to allow compensation different from what is here provided, if the fee arrangement appears, in retrospect, to have been improvident in light of developments unanticipated at the outset. The Firm

understands and agrees that if aggregate interim payments exceed the amount which is ultimately allowed, the Firm will be required to, and will promptly repay the difference to the estate.

11.  The Firm requests that this Court enter an order modifying the time limitations of Bankruptcy Code Section 331 and permit the submission of interim fee applications on a 60-day basis rather than on the 120-day basis prescribed by that section.

12.  The Firm has not shared, or agreed to share, any compensation as may be awarded by the Court, except as among members of the Firm, except as disclosed herein.

WHEREFORE, the Debtor prays that it be authorized, pursuant to Bankruptcy Code Section 327 and Rule 2014(a) of the Bankruptcy Rules, and the terms of the Legal Services Agreement, to employ Jeffrey D. Goetz, Esq. and the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C. as its General Reorganization Counsel, with the compensation to be at the expense of the estate in such amounts as the Court may hereafter allow in accordance with the law; that Bradshaw, Fowler, Proctor & Fairgrave, P.C. be permitted to submit interim fee applications every 60 days; and for such other and further relief as the Court may deem just and equitable under the circumstances.

Dated: 12/20/2016                              /s/    *Dawnett Willis*
                                               Dawnett Willis, Acting CEO
                                               Central Iowa Health Care
                                               Debtor and Debtor in Possession

I declare under penalty of perjury under the laws of the United States and the laws of the State of Iowa that I have reviewed the attached Application and to the best of my knowledge and information, I believe the statements therein to be true and correct.

Dated:  December 20, 2016

/s/      Jeffrey D. Goetz
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

CERTIFICATE OF SERVICE:  This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/     Barbara Warner

5

## BRADSHAW FOWLER
## PROCTOR & FAIRGRAVE

WRITER'S INFORMATION
**JEFFREY D. GOETZ**
ATTORNEY AT LAW

DIRECT (515) 246-5817
goetz.jeffrey@bradshawlaw.com

October 26, 2016

Central Iowa Healthcare
c/o Ms. Carol Hibbs, Chair
Board of Trustees
3 South 4th Avenue
Marshalltown, IA  50158

    Re:    Legal Services Agreement

Dear Ms. Hibbs:

    We are pleased to confirm our availability to provide legal representation to Central Iowa Healthcare, fdba Marshalltown Medical Surgical Center ("CIH") under Chapter 11 in the U.S. Bankruptcy Court for the Southern District of Iowa. I will serve as your primary contact with our firm, although I may obtain the assistance of other attorneys and paralegals in our firm in connection with this representation.

    The purpose of this letter is to establish our agreement with regard to the nature and scope of our retention and to provide you with a summary of the obligations in connection with our retention. Accordingly, we submit for your approval the following provisions which will govern our engagement. If you are in agreement, please sign the enclosed copy of this letter in the space provided below. If you have any questions about these provisions, or if you would like to discuss possible modifications, do not hesitate to call. Again, we are pleased to have the opportunity to serve CIH.

### SCOPE OF REPRESENTATION

    With your assistance, we shall prepare and file with the bankruptcy court all necessary and appropriate documents required by applicable law in connection with the initiation and operation of a Chapter 11 bankruptcy reorganization case. Our retention includes representation of CIH's interests as required under applicable bankruptcy law and rules. We will appear at all hearings where the attorney for the debtor is required to appear, and we will keep you advised as to all events that take place or that we anticipate taking place in the bankruptcy court with regard to the pendency of the Chapter 11 case.

**EXHIBIT A**

BradshawFowlerProctor & Fairgrave, P.C.

Central Iowa Healthcare
October 26, 2016
Page 2

### Identification of Client

For all purposes of this bankruptcy case, and otherwise, CIH, shall be the client. All duties and responsibilities created and imposed by this agreement shall be owed to CIH and not to any officer, agent, partnership, other corporation, trustee, employee or third party as individuals, unless expressly otherwise agreed, and then only after full and accurate disclosure to the court and other necessary parties. The parties to this agreement will immediately disclose any contemplated relationship to the United States Bankruptcy Court, the United States Trustee, all parties in interest, and all other parties entitled to receive notice.

You have authorized and empowered Jeffrey D. Goetz, Esq., Krystal R. Mikkilineni, Esq., and the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C. (the "Firm") to handle your Chapter 11 bankruptcy case in the United States Bankruptcy Court, using such legal means as are available under the Bankruptcy Rules and the United States Bankruptcy Code, and other applicable statutes and case authorities.

The parties agree that this agreement does not contemplate extraordinary legal services outside the ordinary course of a Chapter 11 bankruptcy case and that such matters are subject to the provisions of a separate fee agreement.

### Uncertain Outcome

We have discussed with you various legal and factual considerations involved in our representing CIH in this Chapter 11 case. It is our goal to assist CIH with reorganizing its financial affairs and to file and have approved a disclosure statement in connection with an operating plan of reorganization. It is our further goal that such plan of reorganization be approved by the requisite number of creditors and by the bankruptcy court, and that the plan of reorganization, so approved, be fully consummated. However, we cannot provide any guaranty of the results that may eventually occur. Furthermore, because of the various uncertainties involved in Chapter 11 proceedings, we cannot guarantee any maximum fee that may be incurred by our firm as a result of our representation in the Chapter 11 case. We have discussed the various uncertainties related to Chapter 11 proceedings and you have acknowledged your undertaking of the existence of those uncertainties.

### FEES AND EXPENSES

#### General

As we have also discussed, the Bankruptcy Code allows the attorney for the debtor to take a retainer prior to the filing of the case but does not allow the debtor's attorney to be paid again until the expiration of the initial either 60 or 120-day period after the case is filed. Accordingly, it is necessary for us to obtain a $100,000.00 retainer that we believe is appropriate under the circumstances.

BradshawFowlerProctor&Fairgrave, P.C.

Central Iowa Healthcare
October 26, 2016
Page 3

The retainer will be held in trust by the Firm and is billed against during the course of the case. Billings are made on a monthly basis based upon our regular hourly rates for attorneys performing the services. Jeffrey D. Goetz's current hourly rate is $375, and Krystal R. Mikkilineni's hourly rate is $190. Although I will be the partner in charge of your case, we will delegate those matters which can be properly handled by associates and paralegals. We make decisions about delegation based upon the level of skill required for the task and in order to ensure the most efficient and cost effective representation of your interests. Paralegals' rates are generally from $90 to $125 per hour and associates' rates are generally from $125 to $250 per hour. All expenses which we incur in the representation of your interests in the Chapter 11 will be charged against the retainer as well. These would include, but would not be limited to, any postage or copying charges for any large or out-of-the-ordinary mailings, delivery charges when hand deliveries are necessary, and/or Federal Express charges when overnight delivery is necessary in order to expedite the handling of the case, long-distance telephone charges, mileage for any out-of-town travel, and any and all necessary and related expenses.

All attorneys' fees and expenses must be approved by the bankruptcy court based upon fee applications which we will file periodically. Those applications contain a complete description of all of the services performed and the time spent performing same. All items are itemized in the fee application. Once the retainer has been used, we would seek authority under the Bankruptcy Code for payment of additional retainers and/or fees as are necessary to fully compensate our firm for its services in the Chapter 11 case.

The parties agree that the Firm may, in its discretion, increase the scheduled hourly rates and costs of reimbursable expenses as necessary during the course of the engagement, subject to bankruptcy approval. Additionally, in the event that the Firm increases its rates or the costs of its reimbursable expenses to its other commercial clients, the higher rates shall be deemed substituted for the initial rates described in this agreement, subject to bankruptcy court approval.

The parties agree that the retainer/case advance is deemed a trust fund, to be deposited in our unsegregated trust account, and you will not receive the benefit of interest earned in that account. Any interest earned on deposits in this unsegregated account will be paid, as required by law, to the State Bar of Iowa to fund legal services for indigent persons. If either you or the Firm notifies the other in writing of its decision to terminate this representation, the balance of the retainer/case advance may be applied to all accrued but unpaid fees and expenses for the period before the effective date of termination, with the same type of accounting to the client and judicial review as provided for herein. The balance of the retainer/case advance, if any, will be promptly returned to you, the debtor-in-possession, or the trustee, as appropriate.

### Arbitration

If you disagree with the amount of our fee, please take up the question with us as soon as possible. Typically, such disagreements are resolved to the satisfaction of both sides with little

BRADSHAWFOWLERPROCTOR&FAIRGRAVE, P.C.

Central Iowa Healthcare
October 26, 2016
Page 4

inconvenience or formality. In the event of a fee dispute which is not readily resolved, you have the right to request arbitration under supervision of the state or district bar associations for the jurisdictions in which we practice, and we agree to participate fully in that process.

While we hope that it will never become necessary, in the event of litigation before any court or tribunal concerning the amount of attorneys' fees and/or costs billed or the terms of this agreement, the prevailing party shall be entitled to reasonable costs and attorneys' fees incurred in such litigation. Should the Firm represent itself in such litigation, the Firm shall be entitled to recover reasonable fees for the time spent on the litigation based on the standard hourly billing rate(s) of the attorneys involved. The Firm will be considered the prevailing party if it recovers any amount, by judgment, arbitration, stipulation or otherwise, in excess of your last written offer of settlement.

## DISCLOSURE OF CONFLICTS

Iowa and bankruptcy law require us to disclose any potential conflicts of interest that may arise as a result of the proposed representation, and to seek a written waiver of such conflicts, as appropriate. You have asked that the firm undertake to represent CIH. To the best of our knowledge, we do not represent any creditors of yours. We do have relationships with parties who also have relationships with parties who may have relationships with you. We do not believe these relationships present any conflict which needs to be waived.

For the sake of complete disclosure, on September 22, 2016 Ms. Abigail Hillers joined the Firm as an associate attorney. Ms. Hillers was previously employed by United Bank in Marshalltown, a secured creditor of CIH. Ms. Hillers and the Firm do not represent United Bank. Additionally, in the past, the Firm has represented Iowa Health Systems, prior to its name change to UnityPoint Health, in defense of medical malpractice claims, but does not have any current representations of them.

## DUTIES OF CLIENT

CIH agrees to cooperate fully with us in providing all documentation and information which we may request in the course of our representation of CIH's interests in the Chapter 11 case. CIH agrees to timely execute all necessary and appropriate documentation that may be required in the course of our representation and to meet with us upon our reasonable request. You or another authorized officer, are expected to be available to appear, in person, at all required depositions, examinations, conferences, hearings and meetings. Shortly after the case is filed, there will be an organizational meeting with a representative of the United States Trustee, and soon after that there will be a first meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code. An authorized officer or other representative will be required to attend both of these meetings with us. Attached to this Agreement, for your reference and review, is a detailed explanation of most but not all of the duties of a debtor in possession in a Chapter 11 case.

BradshawFowlerProctor & Fairgrave, P.C.

Central Iowa Healthcare
October 26, 2016
Page 5

## DOCUMENT RETENTION

During the course of our relationship, we will accumulate materials related to our representation of CIH's interests (e.g. notes, research materials, and materials we have received from you, sent to you or received from third parties.) Some of these materials will constitute attorney/client privileged communications or attorney-work product and will be kept confidential in accordance with applicable rules of professional conduct. From time to time, we purge the files of duplicative or out-dated materials, copies of materials that may be obtained from other sources, interim drafts of documents and other documents.

Some materials related to our representation of CIH's interests (e.g. administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, correspondence and internal lawyer's work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by us or for the internal use of lawyers) belong to us and will be handled in accordance with our document retention policy. Other materials (e.g. documents provided to us by you and the final version of the documents that you retain us to create) are considered client files and belong to CIH. If, at your request, we retain CIH's files beyond the firm's document retention period, such long-term storage will be at your cost. If no such request is received, we reserve the right to destroy or otherwise dispose of CIH's files after the end of the firm's document retention period.

## INTERNET CORRESPONDENCE

Our attorneys routinely send and receive information by e-mail over the Internet. If communicating in this fashion would be convenient, you may reach any of our attorneys by addressing e-mail to them by their last name followed a period and their first name at bradshawlaw.com (i.e. goetz.jeffrey@bradshawlaw.com). Because of the nature of the Internet, the security and privacy of Internet e-mail may not be assured. Accordingly, if you would prefer that we not communicate with you via e-mail, please inform us.

## TERMINATION

Either party may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the above matter (and, if you so request, we will suggest to you possible successor counsel and provide it with whatever papers you have provided to us). If permission for withdrawal is required by a court, we will promptly apply for such permission, and you agree to engage successor counsel to represent you.

If termination occurs, your papers and property will be returned to you promptly. Our own files pertaining to the case will be retained by us. Termination of our services will not

BRADSHAWFOWLERPROCTOR&FAIRGRAVE, P.C.

Central Iowa Healthcare
October 26, 2016
Page 6

affect your responsibility for payment for legal services rendered and out-of-pocket costs incurred before termination and in connection with an orderly transition of the matter.

## CLOSING

We trust that this agreement is not unduly complicated. From our experience, legal matters are complicated by nature. The purpose of this agreement is to set forth the essential terms and conditions of employment in writing, so that both parties have a full understanding. If the foregoing is an accurate statement of our agreement, please indicate in the appropriate place below and return this letter.

Very truly yours,

Jeffrey D. Goetz
For the Firm

Enclosure

I acknowledge and consent with the terms of this Agreement.

Dated: 10-31-2016                    _Carol Hibbs_
                                     Central Iowa Healthcare
                                     By: Ms. Carol Hibbs, Chair
                                     Board of Trustees

## CHAPTER 11 DEBTOR IN POSSESSION – SUMMARY OF DUTIES

The purpose of this memo is to outline your legal obligations while operating in reorganization under Chapter 11 of the Bankruptcy Code. An individual that has filed a petition for reorganization pursuant to Chapter 11 is permitted to continue its business as a debtor-in-possession, unless the court should order otherwise. 11 U.S.C. Section 1107-1108.

A debtor-in-possession is authorized to carry out those functions that are in the "ordinary course of business", meaning what has become normal or usual for the Debtor. If a proposed transaction, such as a substantial sale of property or large investment, falls outside the ordinary course of business, prior court authorization is required. As your counsel we must, therefore, file an appropriate application and obtain a court order for any business transaction which you may desire that is out of the ordinary course of business. If you have any doubts regarding whether a particular transaction is in the ordinary course of your business, you should immediately consult with us.

The debtor-in-possession must do nothing to unreasonably diminish the value of the reorganized estate. In other words, donations, new mortgages, or security interests, large transactions, salary increases or bonuses, or substantial investments would be subject to close scrutiny by the court and all of your creditors, and should not be done without prior court approval. Preservation and maintenance of assets is critical. Good relations with creditors throughout the reorganization proceedings, regardless of your personal feelings, are also essential. The following is a list of guidelines that should be strictly followed in carrying out duties as debtor-in-possession:

- Do not retain any professional person, independent contractor, or consultant, or agree to compensate any such persons without consulting legal counsel and obtaining prior court approval.
- Do not pay any debts which were incurred prior to the filing of the petition. If you believe that certain debts must be paid, inform counsel before making any such payments, so that court approval can be sought if necessary.
- Maintain a separate account or set aside appropriate moneys for payment of all taxes accruing after the filing of the petition.
- Maintain insurance on all property and change your coverages to insure your interest as debtor-in-possession. The insurance should afford full protection against loss and include fire, theft, personal injury (including umbrella liability), and natural disaster coverage.
- Ensure that adequate security and fire protection are provided for all assets.
- Make sure that any payments to creditors are being credited on your books and records as post-petition debts and not pre-petition debts.
- Maintain books and records in good order and on a current basis.
- Set aside post-petition FICA withholding in a separate account on books and records, concerning any employees.
- Check with legal counsel before releasing any information regarding your reorganization proceedings. Favorable impressions, including press, are important to public and creditor relations.

- Give notice of your reorganization case to all parties who have sued you. You must advise legal counsel of all pending litigation, and, to the best of our knowledge, this has already been provided to us.
- Inform legal counsel immediately if any governmental agency, federal or state, seeks to conduct an investigation of your business affairs.
- Insider, affiliate and family transactions between one another are ordinarily suspect. If a proposed transaction with such an outsider becomes necessary, the terms and conditions of such transaction should be fully disclosed to all interested parties, and **prior** court approval should be sought.
- Change all bank accounts to reflect your particular status as debtor-in-possession.
- Maintain debtor-in-possession accounts only in authorized depositories and accounts. Consult legal counsel as to whether a particular bank is an authorized depository. Transfer all prior accounts to an authorized depository and identify them as debtor-in-possession accounts.
- Deposit accounts in banks should not exceed $100,000 at any time (maximum account of FDIC insurance). Additional deposits in a single account must be secured by the depository bank pledging sufficient securities to the Federal Reserve.
- Notify all current depository banks of the commencement of this case.
- Always be prepared to explain and document all withdrawals from any accounts opened after filing of the bankruptcy petition.
- Special accounts that are not authorized by statute must be authorized by the bankruptcy court. Please consult with legal counsel about this.
- Establish a procedure regarding check signing authority and justification for expenditures.
- Segregate trust funds, such as deposits or taxes, from operating funds, and maintain all trust funds in designated depository accounts. Under no circumstances should tax or other trustee funds be commingled with the funds of the debtor-in-possession operating accounts.
- Do not give any assurances of payments to creditors who were in existence prior to filing of the petition.
- Do not incur any liabilities that cannot be paid; these liabilities are administrative priority expenses.
- Establish accounting and bookkeeping procedures to allow for immediate access to financial information regarding cash and security positions. As debtor-in-possession, you are required to file monthly reports with the court, summarizing cash transactions and other financial data.
- Avoid excessive expenditures, particularly for unnecessary leased luxury items (cars, special office equipment, etc).
- Do not make gifts to charity, or to anyone else.
- Do not offer, give or accept any payments that might be interpreted as bribes or wrongful inducements.
- Do not make transfers for other than reasonably equivalent value or outside the normal scope of your business.
- Do not make advances to employees other than actual, anticipated expenses.

- Maintain complete accountings of all cash expenditures, including vouchers and receipts
- Do not engage in speculative ventures or activities.
- All capital purchases for vehicles, furniture and machinery should be avoided, unless in the "ordinary course of business". Certain capital purchases may be made if reasonably necessary, or if in the ordinary course of business.
- Provide legal counsel with complete information regarding any proposed sale of assets, sufficiently in advance to permit consultation.
- Assets that are unnecessary to the operation of the Debtor's business and are depreciating in value may have to be sold at a fair price. Bankruptcy court approval must be obtained for any such sale
- Any proposed sale of real estate requires notice of a hearing and an appearance before the court.
- Legal inquiries from creditors should be immediately referred to your legal counsel.
- Extending credit to insiders, relatives, or employees may subject you to criticism. Extending credit is a sale not in the ordinary course of business and requires prior court approval.
- Do not borrow, obtain credit, or grant any lien or security interest without court approval.
- With regard to your secured creditors:
  A. Do not permit any repossessions of your property without court order;
  B. Make no payment on any pre-petition debts to the Internal Revenue Service without court order (required installment payments may be made under certain limited circumstances);
  C. Payments on other secured indebtedness may be made only in accordance with court order;
  D. Do not use "cash collateral" without prior court approval. "Cash collateral" consists of cash, negotiable instruments, documents of title, securities, deposit accounts and proceeds of accounts receivable which have been pledged or serve as collateral for a pre-petition debt; and
  E. All valid post-petition liens are enforceable.
- Do not pay pre-petition taxes. If the Company wishes to pay certain pre-petition taxes to avoid penalties that may accrue, prior court approval should be sought.
- Pay all post-petition taxes on a current basis.
- All FICA, withholding and unemployment taxes accruing after the filing date must be deposited on a current basis.
- Contact appropriate authorities regarding state and local taxes to ensure that proper procedures are followed.
- All tax returns normally required must still be filed on a regular basis.
- Post-petition relations with employees should be maintained on a normal basis. Payrolls should be made on time, and taxes should be paid in accordance with the Internal Revenue Service special requirements.
- Within 20 days after filing the petition, you should write a letter to all utility services, notifying them of your Chapter 11 filing date and giving them adequate assurance of future payment. Explain that you intend to pay all post-filing utility

- bills in a timely fashion. Contact legal counsel immediately if any utility company seeks to cut off service, or if there is any doubt about continuation of service.
- Review executory contracts (to be performed) and unexpired leases to determine whether or not we should notify the court that such are going to be rejected. Consult with legal counsel and do not perform under these contracts until appropriate arrangements have been made through legal counsel.
- Do not make any pre-petition payments without court order. All post-petition lease payments should be made on a current basis.
- Contact legal counsel if you wish to retain any professionals such as attorneys, accountants, consultants or appraisers. As debtor-in-possession, you are liable in state or federal courts for any post-petition wrongdoings.
- Keep legal counsel informed of all potential litigation.
- Report to legal counsel any transfer from the Debtor within the last year, for which little or no consideration was received in return.
- Report to legal counsel any payment of a pre-petition debt after the filing of the petition.
- Report to legal counsel any payment on or giving of security for an unsecured debt within the last year.

The foregoing outlines many of the responsibilities of a debtor-in-possession. Some of the debtor's duties have previously been performed, others simply are not applicable to you.

One very important aspect of the Chapter 11 is remaining current on your expenses after you enter into a Chapter 11. This means, especially, taxes, utilities, suppliers, wages, and any health or insurance claims you have for your employees. All expenses must be met. On the other hand, you are prevented from paying any past-due debts to any unsecured creditors. Any payment to them at this point may constitute a preferential transfer and may diminish the confidence creditors will have in your plan. There will be a gray area as far as people who have shipped goods to you or are currently providing services and will bill you immediately before or after the filing. This will have to be met on a case-by-case basis, and I recommend you bring these to my attention.

Payments made without proper authorization of the court or for improper purposes may have to be repaid by you as debtor-in-possession. Personal liability for officers or directors also may result if there is a willful or deliberate violation of these fiduciary duties by the Debtor. In addition, failure to carry out these duties of a debtor-in-possession may lead to the appointment of a separate trustee or conversion of your case to a Chapter 7 liquidation of assets.

Finally, please be advised that you will have to submit a monthly statement of income and expenditures to the court. This financial report must contain information included in the operating guidelines that you provide to the United States Trustee's office. You may choose the period to begin these monthly reports at a time which is most convenient to you. However, the period you choose should begin to run within thirty (30) days from the filing of the bankruptcy petition. We will retain a copy in our files and see that copies are filed with the bankruptcy court and the United States Trustee's office.



## BRADSHAW FOWLER
## PROCTOR & FAIRGRAVE
### A PROFESSIONAL CORPORATION
#### ATTORNEYS AT LAW

**WRITER'S INFORMATION**
**JEFFREY D. GOETZ**
ATTORNEY AT LAW

DIRECT (515) 246-5817
goetz.jeffrey@bradshawlaw.com

EDWARD E. JOHNSON
DAVID J W PROCTOR
MARK L TRIPP
DAVID L JENKINS
STEVEN M AUGSPURGER
D BRIAN SCIESZINSKI
GREGORY L KENYON
JEFFREY D GOETZ
ANN C SPELLMAN
SEAN M O'BRIEN
PATRICK D SMITH
JASON T MADDEN
LORI A BRANDAU
MATTHEW J HAINDFIELD
JASON C PALMER
SCOTT WOHMSLEY
JANICE M THOMAS
ANDREW C JOHNSON
THOMAS J JOENSEN
CHET A MELLEMA
CHRISTINE B LONG
THOMAS M BOES
JULIE A BUENZOW
TIMOTHY N LILLWITZ
BRADLEY M BEAMAN
ANTONIO COLACINO
MARK C FELDMANN
DOYLE D SANDERS
JUSTIN E LAVAN
SETH R DELUTRI
CHRISTINE F HALBROOK
MATTHEW R PHILLIPS
ABIGAIL M HILLERS
CAROLINE K BETTIS
CATHERINE M LUCAS
ROBERT J THOLE
KRYSTAL R MIKKILINENI
ANDREW P LESKO
BRIANNA L VAUGHN
STEPHANIE A KOLTOOKIAN

CHARLES S BRADSHAW
1871-1953
REX H FOWLER
1893-1972
W Z PROCTOR
1902-1995
D J FAIRGRAVE
1906-1990

**OF COUNSEL**

SMITH & KRAMER, P C
WILLIAM S SMITH
JAN MOHRFELD KRAMER

KENT M FORNEY
MICHAEL H FIGENSHAW
JOHN C CORTESIO, JR
JAMES M HOLCOMB
DENNY M DENNIS
DONALD F NEIMAN
KELLY L MCCARTY

December 13, 2016

Ms. Carol Hibbs
Chair, Board of Trustees
3 South 4th Avenue
Marshalltown, IA 50158

  Re: Engagement for Legal Services
     <u>Amendment to Engagement Agreement Dated October 26, 2016</u>

Dear Ms. Hibbs:

  As you know, pursuant to an engagement letter dated October 26, 2016, Bradshaw, Fowler, Proctor & Fairgrave, P.C. ("BFPF", the "firm," "we" or "us") is currently engaged as legal counsel to Central Iowa Healthcare f/d/b/a Marshalltown Medical Surgical Center to represent the hospital as General Reorganization Counsel in connection with a proposed matter to be filed under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Iowa. As you further know, this firm has been working collaboratively with your Special Healthcare and Reorganization Counsel, Aaron L. Hammer and Mark Melickian of Sugar, Felsenthal, Grais & Hammer, LLP ("SFGH") on this matter, with care to allocate work and responsibility between the firms to avoid unnecessary duplication of effort.

  Pursuant to the original engagement letter, this firm received an initial security retainer of $100,000, and SFGH received an initial security retainer of $50,000. Pursuant to discussions between the two law firms, and as a consequence of the time and expense incurred as a result of the division of work that has been performed to date on this matter, the firms have agreed that SFGH's initial retainer should be increased to $75,000, to be accomplished through a transfer of $25,000 from Bradshaw to SFGH out of the security retainer currently being held by Bradshaw. Thus, both firms will have received security retainers of $75,000 to assist the hospital in preparing for bankruptcy.

  This change constitutes an amendment to the original engagement and therefore requires your consent and written approval on behalf of the hospital, by countersigning and returning this letter to my attention. Other than as discussed

**BRADSHAW FOWLER PROCTOR & FAIRGRAVE, P.C.**

Ms. Carol Hibbs
December 13, 2016
Page 2

above, the engagement letter dated October 26, 2016, remains in full force and effect.

    We again thank you for your trust and to maintaining a mutually satisfactory and productive relationship with you in serving as your legal counsel.

Very truly yours,

Jeffrey D. Goetz
For the Firm

Central Iowa Healthcare agrees that to the proposed amendment to the engagement agreement dated October 26, 2016, stating the basis on which it has engaged Bradshaw, Fowler, Proctor & Fairgrave as legal counsel, which engagement letter, as amended herein, remains in full force and effect.

**Central Iowa Healthcare**

By: _Carol Hibbs_

Name: Carol Hibbs

Title: Chair, Board of Trustees

JDG/bgw