**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No.:  16-02438-11als |
| | ) | |
| **CENTRAL IOWA HEALTHCARE** | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | Hon. Anita L Shodeen |
| | ) | |
| 3 South 4th Avenue | ) | **DEBTOR'S APPLICATION FOR** |
| Marshalltown, IA 50158 | ) | **APPROVAL OF EMPLOYMENT OF** |
| | ) | **SUGAR FELSENTHAL GRAIS &** |
| EIN: 42-0948420 | ) | **HAMMER LLP AS SPECIAL** |
| | ) | **HEALTHCARE  REORGANIZATION** |
| | ) | **COUNSEL** |
| | ) | |
| _____ | ) | No Hearing Set |

Central Iowa Healthcare ("CIH" or "Debtor"), Debtor and Debtor in Possession herein, by

and through its proposed  General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm

of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully represents as follows:

1.      The Debtor herein filed its Voluntary Petition under Chapter 11 of the Bankruptcy

Code (Docket Item 1) on December 20, 2016 ("Petition Date"), and is duly acting as a Debtor in

Possession pursuant to Bankruptcy Code Sections 1107 and 1108.

2.      The Debtor  wishes to employ Aaron L. Hammer, Esq., Mark S. Melickian, Esq.,

and Sugar Felsenthal Grais & Hammer LLP ("SFGH"), 30 N. LaSalle St., Suite 3000, Chicago, IL

60602, as its Special Healthcare Reorganization Counsel, at the expense of the estate, pursuant to

Bankruptcy Code Section 327(a), to advise and assist the Debtor in connection with the special and

unique legal issues arising from and in connection with a Healthcare Business case as defined in

Bankruptcy Code Section 101(27A), including but not limited to the transfer of healthcare business

assets during the pendency of a bankruptcy case.  In addition, SFGH will advise the debtor in

connection with debtor in possession financing, the sale of assets and transfer of responsibilities to a new healthcare operator, the transfer or termination of contracts (assumption/assignment of executory contracts), and other related matters as may arise from time to time, as the Debtor and its counsel may request.

3.      The Debtor has selected Aaron L. Hammer, Esq., Mark S. Melickian, Esq., and SFGH, based on their expertise and experience in bankruptcy workouts, reorganizations, and their experience in dealing with asset purchasers, management and disposition of commercial assets and equipment, especially with regard to Healthcare Businesses.  Mr. Hammer and Mr. Melickian are both partners in SFGH and have extensive experience in bankruptcy and reorganization, as well as business transactions.

4.      The Debtor and SFGH have entered into an Engagement for Legal Services Agreement dated October 25, 2016 and amended December 12, 2016.  A copy of the Agreement and the Amendment are attached hereto as Exhibit "A."

5.      SFGH received $75,000 on November 21, 2016 as a retainer to guaranty payment of its services in this Chapter 11 case.  SFGH has been paid $72,125.00 in fees and $1,825.72 in reimbursement for costs prior to the Petition Date.  There remains $1,039.28 in the SFGH Client Trust Account, to be applied to attorney fees and costs incurred, after application to and upon approval by the Bankruptcy Court.

6.      At the conclusion of this case, SFGH will file an appropriate final application seeking allowance of all fees and costs, regardless of whether interim compensation has been paid.  Upon allowance of such fees and costs, the Debtor will pay SFGH the difference between the amount finally allowed and any interim compensation paid, all in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the orders, local practice and

custom of this Court.

7.      SFGH possesses the requisite experience and expertise to represent the Debtor in

the liquidation/sale of its assets.  SFGH is familiar with Debtor's business operations, financial

affairs, and circumstances surrounding Debtor's Chapter 11 filing.  The Debtor believes that

SFGH is well positioned to provide it with the type of representation and counseling required to

assist it and its General Reorganization Counsel in a manner that will be cost effective and

efficient for Debtor's estate.

8.      SFGH has undertaken a detailed search to determine, and to disclose, whether

they represent or have represented any significant connections with the Debtor.  In connection

with their proposed retention by the Debtor in this case, SFGH conducted a search of its client

database to determine whether they had any current or past relationships with any of Debtor's

creditors or other parties in interest, their respective attorneys or accountants, the United States

Trustee, or any person employed in the office of the United States Trustee.  The 3M Company, a

creditor, has been a client of this firm in the past on matters unrelated to this matter.  Other than

3M, SFGH does not have any connection with Debtor, its affiliates, creditors, or any other party

in interest, their respective attorneys and accountants, the United States Trustee, or any person

employed by the United States Trustee.

9.      SFGH believes that it does not have an interest adverse to the Debtor or its estate

as that term is used in Bankruptcy Code Section 327(a).  SFGH also believes that it is a

disinterested person as that term is defined in Bankruptcy Code Section 101(14).

10.      The Debtor and SFGH understand and agree that the proposed compensation

agreement is subject to Bankruptcy Code Section 328 which authorizes this Court to allow

compensation different from what is here provided, if the fee arrangement appears, in retrospect,

to have been improvident in light of developments unanticipated at the outset.

11.    Neither Mr. Hammer, Mr. Melickian, nor to the best of their knowledge and information, SFGH, nor any shareholder/member, counsel, associate or other representative thereof, has shared, or agreed to share, any compensation as may be awarded by the Court, except as permitted by Bankruptcy Code Section 504(b) and Bankruptcy Rule 2016 with respect to the sharing of compensation among members of the company.

12.    The Debtor requests that this Court enter an order modifying the time limitations of Bankruptcy Code Section 331 and permit the submission of interim fee applications on a 60-day basis rather than on the 120-day basis prescribed by that section.

WHEREFORE, the Debtor prays the Court enter an order pursuant to Bankruptcy Code Section 327 and Bankruptcy Rule 2014(a), approving the Debtor's employment of Aaron L. Hammer, Mark S. Melickian and SFGH as Special Healthcare Reorganization Counsel, with compensation to be at the expense of the estate in such amounts as the Court may hereafter allow in accordance with the law; and for such other and further relief as the court deems just.

Dated:  December 20, 2016

/s/ Jeffrey D. Goetz
Jeffrey D. Goetz, Esq., IS# 9999366
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8007
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

Proposed General Reorganization Counsel
for Central Iowa Healthcare
Debtor and Debtor in Possession

- 5 -

I, Mark S. Melickian, individually and on behalf of Sugar, Felsenthal, Grais & Hammer, LLP declare under penalty of perjury under the laws of the United States and the laws of the State of Illinois that I have reviewed the attached Application and to the best of my knowledge and information, I believe the statements therein to be true and correct.

Dated:  December 20, 2016                    */s/ Mark S. Melickian*
                                             Mark S. Melickian
                                             Sugar, Felsenthal, Grais & Hammer LLP
                                             30 N. LaSalle St., Suite 3000
                                             Chicago, IL 60602

DECLARATION IN SUPPORT OF MOTION

I, Jeffrey D. Goetz, declare:

1)      I am the Proposed General Reorganization Counsel for Central Iowa Healthcare,

the Debtor and Debtor in Possession herein, and am a shareholder in the law firm of Bradshaw,

Fowler, Proctor & Fairgrave, P.C.  I make this Declaration in support of the Debtor's

Application for Approval of Employment of Sugar, Felsenthal, Grais & Hammer LLP as Special

Healthcare and Reorganization Counsel.  If called as a witness, I could and would be competent

to testify to the following.

2)      I have reviewed the Debtor's Application and am informed and believe and

thereupon allege that the statements made in the Application therein are true and correct to the

best of my information and knowledge.

I declare under penalty of perjury under the laws of the State of Iowa and the laws of the

United States that the foregoing is true and correct and is duly executed this 20th day of

December, 2016 in Des Moines, Iowa.

Dated:  December 20, 2016

*Jeffrey D. Goetz*
Jeffrey D. Goetz, Esq., IS# 9999366
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8007
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

Proposed General Reorganization Counsel
for Central Iowa Healthcare,
Debtor and Debtor in Possession.

CERTIFICATE OF SERVICE:  This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/      Barbara Warner*

# Sugar Felsenthal
# Grais & Hammer LLP

Aaron L. Hammer
Direct: (312) 704-2170
Email: ahammer@sfgh.com

30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Office: (312) 704-9400
Fax: (312) 372-7951

www.SFGH.com

October 26, 2016

Carol Hibbs
Chair, Board of Trustees
3 South 4th Avenue
Marshalltown, IA 50158

Re:  Engagement for Legal Services

Dear Ms. Hibbs:

Thank you for providing Sugar Felsenthal Grais & Hammer LLP (the "firm," "we" or "us") the opportunity to serve as your legal counsel. We will do our best to advance your goals and achieve your objectives as efficiently as possible. This letter sets out the terms of our engagement, so that you and the firm are clear on our respective roles.

1.      Client.  Central Iowa Healthcare f/d/b/a Marshalltown Medical Surgical Center ("you") is our only client in this engagement. We will not be representing any of its affiliates, officers, directors, or employees unless specifically engaged to do so.

2.      Scope of Engagement.  You have engaged the firm to represent you in connection with a proposed matter to be filed under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Iowa. Specifically, we are engaged as Special Healthcare and Reorganization Counsel in connection with the preparation to commence a chapter 11 bankruptcy case and to continue in that role during the pendency of the bankruptcy case. We will work collaboratively with your General Reorganization Counsel, Jeffrey D. Goetz of Bradshaw, Fowler, Proctor & Fairgrave, P.C. on this matter, with care to allocate work and responsibility between the firms to avoid unnecessary duplication of effort.

We must mutually agree to any material change in our engagement. The terms set out in this letter will apply to any new or expanded engagement unless we enter into a new engagement letter for the new matter. The parties agree that this agreement does not contemplate extraordinary legal services outside the ordinary course of a chapter 11 bankruptcy case, and that such matters will be subject to the provisions of a modified or separate engagement agreement.

3.      Staffing.  Responsibility for this matter will be shared by me and my partner, Mark S. Melickian. Mark will have primary responsibility for the day to day handling of this matter and supervision of other attorneys and paralegals who may work on this matter. Mark's telephone number is 312-704-2174, and his email is mmelickian@sfgh.com. We will involve

**Sugar Felsenthal**
**Grais & Hammer LLP**

Central Iowa Healthcare
October 26, 2016
Page 2 of 6

other firm lawyers or legal assistants in order to provide you with timely and efficient services or to provide special expertise as needed.

    4.       <u>Fees</u>. For this engagement, as an accommodation to you and to local standards in Iowa, we agree to work for a blended rate capped at <u>$450 per hour</u>. We will bill within this cap at our standard rates, and make the adjustment to the blended rate on our invoices.

    Our fees are based on the time we spend working on your matter. We bill in tenths of an hour. We will try to allocate the work to the most qualified attorney while minimizing costs for you. My current standard hourly rate is $750 per hour, and Mark's is $650 per hour. Current rates for other attorneys who are most likely to work on your matters range from $295 to $510 for attorneys and $195 to $250 for paralegals, but this may vary depending on the staffing requirements for your matters. Our billing rates may be subject to increase from time to time in the ordinary course of our business and in our discretion. During the course of the bankruptcy case, such increase would remain subject to court approval.

    5.       <u>Expenses</u>. You are responsible for cash expenses and fees incurred in providing services to you. These include fees and expenses for travel, computerized research, messenger or overnight delivery, international telephone calls, court filings, subpoenas, court reporters and transcripts, process servers, expert witnesses, and electronic discovery. This may also include co-counsel or other professionals whom we engage with your approval. You also are responsible for any filing fees due to government agencies. We may advance nominal fees and expenses, but invoices for significant third-party charges will be sent directly to you for prompt payment.

    6.       <u>Billing and Payment</u>. We normally send a monthly statement of fees and disbursements. Please review your statement promptly. If you have any questions about your statement, please raise them with me. I will investigate any concerns and seek to promptly resolve the matter. Prior to the bankruptcy case, payment is due within thirty (30) days of the statement date. If you do not timely pay our statements, we may suspend work on your matter.

    Once the bankruptcy case is filed and during the course of the bankruptcy case, payment of our fees and expenses will be subject to the filing of applications for compensation and reimbursement of expenses, and to court approval. Typically, these applications are filed every 90 to 120 days during the case, though the bankruptcy court may approve interim payments on a monthly basis.

    7.       <u>Required Retainer</u>. The Bankruptcy Code allows the attorney for the debtor to take a retainer prior to filing of the case, but does not allow the debtor's attorney to be paid again until the expiration of an initial period, which can be 60 to 120 days after the filing of the case. As this representation is expected to include your filing of a chapter 11 bankruptcy case, we require

# Sugar Felsenthal
# Grais & Hammer LLP

Central Iowa Healthcare<br>October 26, 2016<br>Page 3 of 6

an initial retainer of **$50,000** for this engagement. The retainer must be paid before we begin work on this matter. The retainer is <u>not</u> intended as an estimate or cap on our fees and disbursements for this matter.

This will be a security retainer which we will deposit in our client trust fund account. This deposit remains your property subject to our security interest until used to pay for our services. Prior to the bankruptcy case, the firm may apply it, if we choose, to any delinquent invoice. If either of us notifies the other in writing of a decision to terminate representation, we will apply any retainer balance to your final invoice and return any unused balance to you or, if the bankruptcy case has been commenced, to the debtor-in-possession or the trustee, as appropriate.

Prior to the filing of the bankruptcy case, we may request an increase in or replenishment of the retainer from time to time based on work that the firm has already performed or our estimate of future work. If you fail to promptly pay any additional retainer amount requested, we may suspend work on your matter until payment is made and withdraw from further representation. During the bankruptcy case, we may seek bankruptcy court approval for any replenishment of the retainer as may be necessary to ensure that our firm will be fully compensated for its work during the chapter 11 case.

8.     <u>Communication</u>.   To enable us to represent you effectively, we ask you to cooperate with us and communicate with us openly. We will keep you informed of developments in your matter as it progresses. You agree to provide us with timely and complete responses to any requests for documentation and information. Also, you agree to inform us in writing of any changes in the name of the person we should contact about this matter. As noted in more detail in paragraph 11 below, we routinely send and receive information by e-mail. Please let us know if you have concerns about security or privacy of such communications or prefer, in some cases, to communicate by other methods.

9.     <u>Conflicts of Interest</u>.  The firm is not aware of any actual or potential conflicts of interest with other firm clients arising from our representation of you in this matter. We will notify you if we become aware of any conflicts in the future and will work with you to resolve them. While we have a responsibility for monitoring and identifying conflicts of interest, please notify us immediately if you learn of any conflicts. If you are becoming associated with another company by affiliation, merger, acquisition, or other means, please advise us in time for us to determine whether this association will create a conflict of interest with any of our other clients.

10.     <u>Confidentiality</u>.   We owe a duty of confidentiality to all of our clients. Accordingly, we cannot disclose to you, or use on your behalf, any information that we possess with respect to another client or former client

Sugar Felsenthal
Grais & Hammer LLP

Central Iowa Healthcare
October 26, 2016
Page 4 of 6

11.    <u>Electronic Communications and Storage.</u> We may communicate with you and others by voice, text, data, and email over wired and wireless networks and over the Internet. Emails and documents sent to you by email (whether or not containing confidential information) will not be encrypted unless you request us, in writing, to encrypt outgoing email and we are able to agree with you and implement mutually acceptable encryption standards and protocols. We also store emails, documents and other client information on remote servers hosted by third parties that provide secure data storage. We believe the benefits of using these methods outweigh the risks of unauthorized access that may arise from using them.

12.    <u>Termination of Representation.</u>  You may terminate our representation at any time for any reason. We may also terminate our representation after giving you reasonable time to arrange alternative counsel.  Additionally, our representation of you will terminate automatically after we have performed the work on this engagement unless we separately agree in writing with you.

You must also pay for services provided after termination if, in our view, the services are necessary to protect your interests as part of our ethical obligations to you.

If our representation of you ends, you will take all steps necessary to free the firm of any obligation to perform further services for you, including securing alternative counsel, and you agree to sign any documents necessary to substitute counsel and to consent to our withdrawal as your counsel in any proceeding.  You must pay for services provided and costs incurred through the date of termination.

Although we periodically update our clients and the public about interesting or relevant legal developments, the firm will have no duty to inform you of new developments or changes in the law that may be relevant to your matter after our engagement terminates.

13.    <u>Document Retention.</u>  At any time, you may request that we deliver your client files (excluding internal work product) to you.  We may retain copies of your files, at our expense, for our own information. If you do not request the return of your files, we are authorized to destroy your files in accordance with our file retention policy then in effect, without further notice to you.

14.    <u>No Guarantee.</u>  We can make no promise or guarantee to you about the outcome of this representation.  This engagement is intended to include a chapter 11 representation, which will raise unique and complex legal and factual issues.  It is our goal to assist you with reorganizing your financial affairs and otherwise work to obtain the goals you have set forth for your chapter 11 case, including the confirmation of a chapter 11 plan.  However, there are no guaranties that any such plan proposed in the case will be approved by the requisite number of

**Sugar Felsenthal**
**Grais & Hammer LLP**

Central Iowa Healthcare
October 26, 2016
Page 5 of 6

creditors required by the Bankruptcy Code, or will be approved by the court, or that the conditions to fully consummate a confirmed chapter 11 plan will occur.  Furthermore, we cannot guaranty that our fees will not exceed a certain amount during the case because of the uncertainties of chapter 11 representation. By accepting this engagement letter, you are acknowledging the existence of and your acceptance of these uncertainties.

      15.      Governing Law.  This engagement letter will be governed by the internal laws of the State of Illinois.

Please review this letter carefully.  Unless you promptly advise us to the contrary, we will rely on our understanding that this letter reflects the terms of our engagement.   To avoid doubt, we ask that you formally accept these terms by signing and returning a copy of this letter to me.

We are not obligated to begin providing services until we receive a signed copy of this letter and the initial retainer. We may, in our discretion, begin providing services to you at your spoken direction.  Even if you do not sign this letter, you must pay us for any services we have performed at your direction and related expenses.  Although we have set out the terms of our representation in the form of a letter, this letter is a binding legal contract.

[signatures on following page]

Sugar Felsenthal
Grais & Hammer LLP

Central Iowa Healthcare
October 26, 2016
Page 6 of 6

Thank you for your trust in us. We look forward to a mutually satisfactory and productive relationship with you in serving as your legal counsel.

Very truly yours,

SUGAR FELSENTHAL GRAIS & HAMMER LLP

By: _____
Aaron L. Hammer

Central Iowa Healthcare agrees that this letter states the basis on which it has engaged Sugar Felsenthal Grais & Hammer LLP as legal counsel.

**Central Iowa Healthcare**

By: _____

Name: ___Carol Hibbs_____

Title: ___Chair, Board of Trustees_____

# Sugar Felsenthal
# Grais & Hammer LLP

Aaron L. Hammer
Direct: (312) 704-2170
Email: ahammer@sfgh.com

December 12, 2016

30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Office (312) 704-9400
Fax: (312) 372-7951

Carol Hibbs
Chair, Board of Trustees
3 South 4ᵗʰ Avenue
Marshalltown, IA 50158

www.SFGH.com

Re:   Engagement for Legal Services
      Amendment to Engagement Agreement Dated October 26, 2016

Dear Ms. Hibbs:

As you know, pursuant to an engagement letter dated October 26, 2016, Sugar Felsenthal Grais & Hammer LLP ("SFGH", the "firm," "we" or "us") is currently engaged as legal counsel to Central Iowa Healthcare f/d/b/a Marshalltown Medical Surgical Center to represent the hospital as Special Healthcare and Reorganization Counsel in connection with a proposed matter to be filed under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Iowa. As you further know, this firm has been working collaboratively with your General Reorganization Counsel, Jeffrey D. Goetz of Bradshaw, Fowler, Proctor & Fairgrave, P.C. ("Bradshaw") on this matter, with care to allocate work and responsibility between the firms to avoid unnecessary duplication of effort.

Pursuant to the original engagement letter, this firm received an initial security retainer of $50,000, and Bradshaw received an initial security retainer of $100,000. Pursuant to discussions between the two law firms, and as a consequence of the time and expense incurred as a result of the division of work that has been performed to date on this matter, the firms have agreed that SFGH's initial retainer should be increased to $75,000, to be accomplished through a transfer of $25,000 from Bradshaw to SFGH out of the security retainer currently being held by Bradshaw. Thus, both firms will have received security retainers of $75,000 to assist the hospital in preparing for bankruptcy.

This changes constitutes an amendment to the original engagement and therefore requires your consent and written approval on behalf of the hospital, by countersigning and returning this letter to my attention. Other than as discussed above, the engagement letter dated October 26, 2016, remains in full force and effect.

We again thank you for your trust and to maintaining a mutually satisfactory and productive relationship with you in serving as your legal counsel.

Very truly yours,

SUGAR FELSENTHAL GRAIS & HAMMER
LLP

By: _____
    Aaron L. Hammer

Central Iowa Healthcare agrees that to the proposed amendment to the engagement agreement
dated October 26, 2016, stating the basis on which it has engaged Sugar Felsenthal Grais &
Hammer LLP as legal counsel, which engagement letter, as amended herein, remains in full force
and effect.

**Central Iowa Healthcare**

By: _____

Name: ___Carol Hibbs___

Title: ___Board of Trustees, Chair___