**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No. 16-02438-als11 |
| **CENTRAL IOWA HEALTHCARE** | ) | Chapter 11 |
| Debtor and Debtor in Possession. | ) | Hon. Anita L. Shodeen |
| 3 South 4th Avenue<br>Marshalltown, IA 50158 | ) | **DEBTOR'S APPLICATION TO EMPLOY AND RETAIN ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP, LLC AS FINANCIAL AND RESTRUCTURING ADVISORS TO DEBTOR AND DEBTOR IN POSSESSION PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE** |
| EIN: 42-0948420 | ) | |
| | ) | No Hearing Set |

On December 20, 2016 (the "Petition Date"), Central Iowa Healthcare ("CIH") commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The debtor in possession in the above-captioned action (collectively, the "Debtor" or "CIH") hereby moves for entry of an order pursuant to Bankruptcy Code Sections 327(a) and 328, authorizing the employment and retention of Alvarez & Marsal Healthcare Industry Group, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") to serve as financial advisors to the Debtor,. In support of the Application, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a), 328, 330, 331, and 1107(b) of the Bankruptcy Code, as supplemented by Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## RELIEF REQUESTED

3. By this Application, the Debtor seeks to employ and retain A&M as their financial advisors, pursuant to sections 327(a) and 328 of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, to perform the services set forth more fully herein.

### Retention of A&M

4. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtor has determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estate. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

5. A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

6. A&M comprises a turnaround-management consulting firm founded in 1983 to provide specialized debtor management and advisory services to troubled companies. A&M together with its affiliates have since grown to become a global provider of management and advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas. A&M's core services include turnaround management consulting, interim and crisis management, creditor advisory, and performance improvement. A&M has provided interim management and/or financial advisory and restructuring services in a number of large and mid-size healthcare bankruptcy restructurings including, by way of example, *In re Forest Park Medical Center at Fort Worth*, *LLC*, No. 16-40198-rfn (Bankr. N.D. Tex. Jan. 10, 2016); *In re Specialty Hospital of Washington, et al.*, No. 14-00279 and 14-00295 through 14-00300 (Bankr. D. D C May 21, 2014); *In re Sound Shore Medical Center et al.*, No. 13-22840 (RDD) (Bankr. S.D.N.Y., May 29, 2013), In *Restora Healthcare Holdings, LLC*, et al., No. 14-10367 (PJW) (Bankr. D. Del. Feb. 24, 2015); *In re ProNerve Holdings, LLC*, et al. No. 15-10373 (KJC) (Bankr. D. Del. Feb. 24, 2015); *In re Devonshire PGA Holdings, LLC*, No. 13-12460 (CSS) (Bankr. D. Del. Sept. 19, 2013); *In re Victor Valley Community Hospital*, No. 12-12896 (Bankr. C.D. Cal. Sept.13, 2010); *In re Nevada Cancer Institute*, No. 11-28676 (Bankr. D. Del. Dec. 2, 2011); *In re Rural/Metro Corporation, et al.*, No. 13-11952 (Bankr. D. Del. Aug. 4, 2013); *In re Saint Vincent's Catholic Medical Centers of New York*, No. 05-14945 (Bankr. S.D.N.Y. July 5, 2005).

7. In addition, A&M is familiar with the Debtor's businesses, financial affairs, and capital structure. Since the firm's initial engagement on September 21, 2016 the A&M personnel providing services to the Debtor (the "A&M Professionals") have worked closely with the Debtor's management and other professionals in assisting with the myriad requirements of this

chapter 11 case. Consequently, the Debtor believes that A&M has developed significant relevant experience and expertise regarding the Debtor and the unique circumstances of this case. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of this case. Accordingly, the Debtor submits that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtor's estate, creditors, and all other parties in interest, and should be granted in all respects.

**Scope of Services**

8. The Debtor's prepetition engagement letter (the "Engagement Letter") with A&M as amended and supplemented is attached hereto as Exhibit A, the terms of which shall govern the Debtor's retention of A&M except as explicitly set forth herein or in any order granting this Application.

9. It is our understanding that the Debtor has chosen Bradshaw Fowler Proctor and Fairgrave, PC ("Bradshaw") as General Reorganization Counsel and Sugar, Felsenthal, Grais & Hammer ("SFGH") to act as its Special Healthcare Reorganization Counsel. A&M will work closely with Bradshaw and SFGH to prevent any duplication of efforts in the course of advising the Debtor.

10. Among other things, A&M will provide assistance to the Debtor with respect to management of the overall restructuring process, the development of ongoing business and financial plans and supporting restructuring negotiations among the debtor, its advisors and its creditors with respect to an overall exit strategy for their chapter 11 case. It is anticipated that A&M's activities shall include the following:

i. In collaboration with the CEO, A&M shall assist in the identification (and implementation) of cost reduction and operations improvement opportunities;

ii. Assist the Company in managing its Chapter 11 case, including, without limitation, provide support with respect to the sale of the Debtor's assets and manage the preparation and development of a Disclosure Statement and Plan of Reorganization;
iii. Coordinate with the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders seeking alignment with the Debtor's overall restructuring goals;
iv. Liaise with the Company's key constituents/creditors with respect to financial and operational matters;
v. Provide assistance in such areas as testimony before this Court on matters that are within the scope of this engagement and within our area of testimonial competency;
vi. Assist the Company and other engaged professionals in bankruptcy planning and preparation including liquidity forecasting and planning, negotiating debtor-in-possession financing and the use of cash collateral, "first day" matters, and court-required reporting and disclosures;
vii. Assist in the discussions with and providing information to potential investors, secured lenders, official committees, the Office of the United States Trustee for the Southern District of Iowa (the "U.S. Trustee");
viii. Assist in the overall financial reporting assisting with the administrative requirements of the Bankruptcy Code, including post-petition reporting requirements and claim reconciliation efforts;
ix. Assistance with the case administration and reporting requirements associated with a chapter 11 filing, including, but not limited to, preparing schedules of assets and statements of financial affairs, monthly operating reports, budgets, including in connection with DIP financing and cash collateral, claims reconciliation, and assumption and rejection analyses;
x. Assisting the Debtor and its other advisors in developing restructuring plans or strategic alternatives for maximizing the enterprise value of their various business lines; and
xi. Performing such other services in connection with the restructuring process as reasonably requested or directed by the Company's board of trustee (the "Board") and other authorized Company personnel, consistent with the role played by the Engagement Personnel in this matter and not duplicative of services being performed by other professionals in these proceedings.

## A&M's Disinterestedness

11. To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Declaration of Ronald Winters, annexed hereto as Exhibit B, A&M: (i) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (i) does not hold any interest adverse to the Debtor's estates; and (i) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

12. Accordingly, the Debtor believes that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

13. In addition, as set forth in the Declaration of Ronald Winters, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

**Terms of Retention**

14. Subject to approval by the Court, the Debtor proposes to employ and retain A&M to serve as the Debtor's financial advisor on the terms and conditions set forth in the Engagement Letter.

15. Compensation. In accordance with the terms of the Engagement Letter, A&M will be paid by the Company for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges:

| | | |
|---|---|---|
| i. | Managing Director | $750-950 |
| ii. | Director | $550-750 |
| iii. | Associate | $400-550 |
| iv. | Analyst | $350-400 |

16. Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally. Irrespective of the fees calculated at the hourly rates stated above, A&M will not be cumulatively paid (in respect of professional fees) more that an amount which will increment by $125,000 per month.

17. In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger and telephone charges. In addition, A&M shall be

reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this Application. All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and local rules of this Court.

18. Indemnification. As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtor has agreed to the indemnification provisions in paragraph 10 of the Engagement Letter.

**Fees**

19. The Debtor understands that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the United States Trustee every 60 days.

20. A&M received $75,000 as a retainer in connection with preparing for and conducting the filing of these Chapter 11 cases, as described in the engagement letter. In the 90 days prior to the Petition Date, A&M received payments totaling $297,667.20 in the aggregate for services performed and expenses incurred for the Debtor. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for post-petition services and expenses to be rendered or incurred for or on behalf of the Debtor. The unapplied residual retainer, which is estimated to total approximately $69,209.68, will not be segregated by A&M in a separate account, and will be held until the end of these Chapter 11 cases and applied to A&M's finally approved fees in these proceedings.

21. Given the numerous issues that the A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

**Applicable Authority**

22. The Debtor submits that the retention of A&M under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court' s approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

a. is not a creditor, an equity security holder, or an insider;

b. is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

23. Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the

commencement of the case." 11 U.S.C. § 1107(b). A&M's prepetition relationship with the Debtor is therefore not an impediment to A&M's retention as Debtor's post-petition financial advisor.

24. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). Debtor submits that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtor will require substantial assistance with the reorganization process, it is reasonable for Debtor to seek to employ and retain A&M to serve as its financial advisor on the terms and conditions set forth herein.

25. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, Debtor respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: December 20, 2016

/s/ *Ronald Winters*______________
Ronald Winters
Managing Director
Alvarez & Marsal Healthcare Industry Group, LLC

**Exhibit A**
**Copy of Executed Prepetition Engagement Letter and Amendments**

A & M

**Alvarez & Marsal**
**Healthcare Industry Group, LLC**
540 West Madison Street – Suite 1800
Chicago, IL 60661
Phone: +1 312 601 4220
Fax: +1 312 332 4599

September 21, 2016

Central Iowa Healthcare
3 South Avenue
Marshalltown, Iowa 50158
Attention: Carol Hibbs
Chairman of the Board of Trustees

Dear Ms. Hibbs:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Central Iowa Healthcare, and its subsidiaries and affiliates and their respective assigns and successors (jointly and severally, the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1. Description of Services

(a) A&M shall provide consulting services to the Company at the direction of the Company's Chief Executive Officer (the "Responsible Officer") in connection with their efforts in seeking to improve the Company's financial and operating performance, reporting directly to them, and assist the Company in its reorganization efforts. It is anticipated that A&M's activities shall include the following:

(i) assistance in evaluation of the Company's current business plan and in preparation of a revised operating plan and cash flow forecast and presentation of such plan and forecast to the Company's Board of Directors (the "Board") and its creditors;

(ii) assistance in identification of cost reduction and operations improvement opportunities;

(iii) assistance in the development and management of a 13-week cash flow forecast;

(iv) assistance in financing issues including assistance in preparation of reports and liaison with creditors;

(v) report to the Board as desired or directed by the Responsible Officer(s); and

(vi) other activities as are approved by you, the Responsible Officers or the Board and agreed to by A&M.

In rendering its services to the Company, A&M will report directly to the Responsible Officer(s) and will make recommendations to and consult with the Responsible Officers and other senior officers as the Board or Responsible Officer(s) direct.

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, and subsidiaries and independent contractors. Such affiliates are wholly owned by A&M's parent company and employees.

A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2. Information Provided by the Company and Forward Looking Statements

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company. The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3. Limitation of Duties

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board or Responsible Officers will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or Responsible Officers and only to the extent and in the manner authorized by and directed by the Board or Responsible Officers and agreed to by A&M.

4. Compensation

(a) A&M will receive fees based on the following hourly rates

| | | | |
|---|---|---|---|
| Managing Director | $750 | - | $950 |
| Director - Sr. Director | $550 | - | $750 |
| Associates - Sr. Associate | $400 | - | $550 |
| Analyst - Staff | $350 | - | $400 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally. Irrespective of the fees calculated at the hourly rates stated above, A&M will cap its fees for professional services for the first month of services of $75,000 and then negotiate a monthly cap

periodically for subsequent periods based upon actual and anticipated activity in the engagement. A&M shall be paid $20,000 at the end of each week (the "Weekly Payment") on account of the fees, expenses and other obligations under this Agreement and the Indemnification Agreement. Obligations to A&M will be "trued up" at the time A&M renders its periodic invoice. The Weekly Payment will be adjusted at the time A&M and the Company negotiates a change in the cap on fees as described herein.

(b) In addition A&M will be reimbursed for its reasonable out of pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, computer research, messenger and telephone charges. All fees and expenses will be billed on a monthly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt

(c) The Company shall promptly remit to A&M a retainer in the amount of $75,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

5. Term

(a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

(b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

(c) On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of A&M are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges and agrees that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7. No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8. Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. Each of the Companies acknowledges and agrees that the services

being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company. Each Company represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9. Confidentiality / Non-Solicitation

A&M shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10. Indemnification and Limitations on Liability

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11. Miscellaneous

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation of thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

*Please turn to following page*

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal Healthcare Industry Group, LLC

By: [signature]
Ronald M. Winters
Managing Director

Accepted and agreed:

Central Iowa Healthcare
jointly and severally for itself and on
behalf of its subsidiaries and affiliates

By: Dawnett Willis
Name: COO/Acting CEO
Title: Dawnett Willis

Carol Hibbs
Chair, Board of Trustees

A&M

A&M

**Alvarez & Marsal**
**Healthcare Industry Group, LLC**
540 West Madison Street – Suite 1800
Chicago, IL 60661
Phone: +1 312 601 4220
Fax: +1 312 332 4599

As of November 1, 2016

Central Iowa Healthcare
3 South Avenue
Marshalltown, Iowa 50158
Attention: Carol Hibbs
Chairman of the Board of Trustees

Dear Ms. Hibbs:

Reference is made to the engagement letter dated September 21, 2016 among Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Central Iowa Healthcare, and its subsidiaries and affiliates and their respective assigns and successors (jointly and severally, the "Company") (the "Agreement"). Capitalized terms used herein shall have the same meaning as defined in the Agreement.

Effective as of November 1, 2016 ("Effective Date"), the monthly cap described in paragraph 4(a) of the Agreement is increased to $100,000 and the Weekly Payment is increased to $25,000. As of the Effective Date, the Monthly Cap will be applied on a calendar month basis. All other terms and conditions of the Agreement and the Indemnification Agreement dated September 21, 2016 among A&M and the Company shall remain in effect without modification.

***Please turn to following page***

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal Healthcare Industry Group, LLC

By: [signature]
Ronald M. Winters
Managing Director

Accepted and agreed:

Central Iowa Healthcare
jointly and severally for itself and on
behalf of its subsidiaries and affiliates

By: [signature]
Name: Carol Hibbs
Title: Chair, Board of Trustees
Central Iowa Healthcare

Alvarez & Marsal
Healthcare Industry Group, LLC
540 West Madison Street – Suite 1800
Chicago, IL 60661
Phone: +1 312 601 4220
Fax: +1 312 332 4599

As of December 19, 2016

Central Iowa Healthcare
3 South Avenue
Marshalltown, Iowa 50158
Attention: Carol Hibbs
Chairman of the Board of Trustees

Dear Ms. Hibbs:

Reference is made to the engagement letter dated September 21, 2016 among Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Central Iowa Healthcare, and its subsidiaries and affiliates and their respective assigns and successors (jointly and severally, the "Company") (the "Agreement") as amended and supplemented to date. Capitalized terms used herein shall have the same meaning as defined in the Agreement.

Effective as of the date indicated above, the following amendments are made to the Agreement:

A. Paragraph 1(a) is deleted and replaced with the following:

(a) A&M shall provide consulting services to the Company at the direction of the Company's Chief Executive Officer (the "Responsible Officer") in connection with their efforts in seeking to improve the Company's financial and operating performance, reporting directly to them, and assist the Company in its reorganization efforts. It is anticipated that A&M's activities shall include the following:

(i) In collaboration with CEO, the A&M shall assist in the identification (and implementation) of cost reduction and operations improvement opportunities;

(ii) Assist the Company in managing its Chapter 11 case, including, without limitation, provide support with respect to the sale of the Debtor's assets and manage the preparation and development of a Disclosure Statement and Plan of Reorganization;

(iii) Coordinate the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders seeking alignment with the Debtor's overall restructuring goals;

(iv) Liaise with the Company's key constituents/creditors with respect to financial and operational matters;

(v) Provide assistance in such areas as testimony before this Court on matters that are within the scope of this engagement and within his area of testimonial competency;

(vi) Assist the Company and other engaged professionals in bankruptcy planning and preparation including liquidity forecasting and planning, negotiating debtor-in-possession financing and the use of cash collateral, "first day" matters, and court-required reporting and disclosures;

(vii) Assist in the discussions with and providing information to potential investors, secured lenders, official committees, the Office of the United States Trustee for the Southern District of Iowa (the "U.S. Trustee");

(viii) Assist in the overall financial reporting assisting with the administrative requirements of the Bankruptcy Code, including post-petition reporting requirements and claim reconciliation efforts;

(ix) Assistance with the case administration and reporting requirements associated with a chapter 11 filing, including, but not limited to, preparing schedules of assets and statements of financial affairs, monthly operating reports, budgets, including in connection with DIP financing and cash collateral, claims reconciliation, and assumption and rejection analyses;

(x) Assisting the Debtor and its other advisors in developing restructuring plans or strategic alternatives for maximizing the enterprise value of their various business lines; and

A&M

(xi) Performing such other services in connection with the restructuring process as reasonably requested or directed by the Company's board of trustee (the "Board") and other authorized Company personnel, consistent with the role played by the Engagement Personnel in this matter and not duplicative of services being performed by other professionals in these proceedings.

In rendering its services to the Company, A&M will report directly to the Responsible Officer(s) and will make recommendations to and consult with the Responsible Officers and other senior officers as the Board or Responsible Officer(s) direct.

B. Paragraph 4 ("Compensation) is deleted and replaced with the following:

(a) A&M will receive fees for the services of the Engagement Personnel based on the following hourly rates:

| | | | |
|---|---|---|---|
| Managing Director | $750 | - | $950 |
| Director - Sr. Director | $550 | - | $750 |
| Associates - Sr. Associate | $400 | - | $550 |
| Analyst - Staff | $350 | - | $400 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally. Irrespective of the fees calculated at the hourly rates stated above, A&M will not be cumulatively paid (in respect of professional fees) more that an amount which will increment by $125,000 per month.

(b) In addition A&M will be reimbursed for its reasonable out of pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, computer research, messenger and telephone charges. All fees and expenses will be billed on a monthly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt.

(c) A&M shall retain the unapplied retainer provided under the Prior Agreement which shall be credited against any amounts due at the

termination of this engagement and returned upon the satisfaction of all obligations hereunder.

All other terms and conditions of the Agreement and the Indemnification Agreement dated September 21, 2016 among A&M and the Company shall remain in effect without modification.

*Please turn to following page*

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal Healthcare Industry Group, LLC

By: [signature]
Ronald M. Winters
Managing Director

Accepted and agreed:

Central Iowa Healthcare
jointly and severally for itself and on behalf of its subsidiaries and affiliates

By: [signature]
Name: Carol Hibbs
Title: Chair, Central Iowa Healthcare Board of Trustees

A&M

**Exhibit B**

**Declaration of Ronald Winters**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No. 16-02438-als11 |
| | ) | |
| **CENTRAL IOWA HEALTHCARE** | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | Hon. Anita L. Shodeen |
| | ) | |
| 3 South 4th Avenue<br>Marshalltown, IA 50158 | ) | **DECLARATION OF RONALD WINTERS IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY AND RETAIN ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP AS FINANCIAL AND RESTRUCTURING ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE** |
| EIN: 42-0948420 | ) | |
| ______________________________ | ) | No Hearing Set |

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Ronald Winters, being duly sworn, hereby states as follows:

1. I am a Managing Director with Alvarez & Marsal North Healthcare Industry Group, LLC (together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors, "A&M"), a restructuring advisory services firm with numerous offices throughout the country. I submit this declaration on behalf of A&M (the "Affidavit") in support of the Debtor's Application to Employ And Retain Alvarez & Marsal Healthcare Industry Group, LLC as Financial and Restructuring Advisors to Debtor And Debtor in Possession Pursuant to Sections 327(a) and 328 of the Bankruptcy Code (the "Application") on the terms and conditions set forth

in the Application and the engagement letter between Debtor and A&M attached to the Application as Exhibit A (the "Engagement Letter"). Except as otherwise noted,[1] I have personal knowledge of the matters set forth herein.

**Disinterestedness and Eligibility**

2. A&M together with its professional service provider affiliates (the "Firm") utilize certain procedures ("Firm Procedures") to determine the Firm's relationships, if any, to parties that may have a connection to a client debtor. In implementing the Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtor, and the Firm's relationship with such parties:

a. A&M requested and obtained from the Debtor extensive lists of interested parties and significant creditors (the "Potential Parties in Interest").[2] The list of Potential Parties in Interest which A&M reviewed is annexed hereto as Schedule A. The Potential Parties in Interest reviewed include, among others, the Debtor, prepetition lenders, officers, directors, the certain unsecured creditors of the Debtor, significant suppliers, parties holding interests in the Debtor, significant counterparties to material agreements and significant litigation claimants.

b. A&M then compared the names of each of the Potential Parties in Interest to the names in its master electronic database of the Firm's current and recent clients (the "Client Database"). The Client Database generally includes the name of each client of the Firm, the

---

1 Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based on information provided by them.

2 The list of Potential Parties in Interest is expected to be updated during these cases. A&M continues to review the relationships its attorneys may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist. As may be necessary, A&M will supplement this Affidavit if it becomes aware of a relationship that may adversely affect A&M's retention in these cases or discovers additional parties in interest through the filing of statements of financial affairs or statements under Rule 2019. A&M will update this disclosure if it is advised of any trading of claims against or interests in the Debtors that may relate to A&M's retention or otherwise requires such disclosure.

name of each party who is or was known to be adverse to the client of the Firm in connection with the matter in which the Firm is representing such client, the name of each party that has, or had, a substantial role with regard to the subject matter of the Firm's retention, and the names of the Firm professionals who are, or were, primarily responsible for matters for such clients.

c. An email was issued to all Firm professionals requesting disclosure of information regarding: (i) any known personal connections between the respondent and/or the Firm on the one hand, and either the Potential Parties in Interest or the Debtor, on the other hand,[3] (ii) any known connections or representation by the respondent and/or the Firm of any of the Potential Parties in Interest in matters relating to the Debtor; and (iii) any other conflict or reason why A&M may be unable to represent the Debtor.

d. Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Affidavit. These connections are listed in Schedule B annexed hereto.

3. As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, A&M:

a. is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services),[4] an equity security holder of the Debtor;

---

3 In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any A&M professional or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtor or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtor's estate. It is also noted that in the course of our review it came to A&M's attention that A&M personnel hold de minimis investments, representing not more than 0.01% of the equity interests in the related entity, in various parties in interest, including but not limited to GE Healthcare, IBM Corporation, Johnson & Johnson Healthcare, Siemens Medical Solutions, Verizon Wireless, and Wells Fargo.

4 See paragraph 11 below.

b. is not, and has not been, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

c. does not have an interest materially adverse to the interests of the Debtor's estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

4. As can be expected with respect to any international professional services firm such as A&M, the Firm provides services to many clients with interests in the Debtor's chapter 11 case. To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtor's chapter 11 case.

5. In addition to the relationships disclosed on Schedule 2, I note that:

a. Wells Fargo Bank, National Association ("WFBNA") together with certain of its affiliates (collectively, "Wells Fargo") are Potential Parties in Interest. Under a credit facility (the "Credit Facility") to A&M's parent company Alvarez & Marsal Holdings, LLC ("A&M Holdings"): WFBNA is administrative agent, swingline lender and issuing lender and Wells Fargo Securities, LLC is a joint lead arrangers and joint book runner. In addition to the receipt of interest in its capacity as a lender under the Credit Facility, Wells Fargo has received certain customary and negotiated fees and reimbursement of expenses in connection with its roles under the Credit Facility; and

b. The spouse of the Debtor's Chief Executive Officer was a client of A&M's affiliate in an unrelated litigation matter that was completed in 2014.

6. Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-

in-interest in the Debtor's chapter 11 cases. Further, the Firm has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in matters upon which A&M is to be employed, and none are in connection with this case.

7. To the best of my knowledge, no employee of the Firm is a relative of, or has been connected with the United States Trustee in this district or its employees.

8. Accordingly, to the best of my knowledge, A&M is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that A&M: (i) is not a creditor, equity security holder, or insider of the Debtor; (ii) was not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor; and (iii) does not have an interest materially adverse to the interest of the Debtor's estates or of any class of creditors or equity security holders.

9. If any new material relevant facts or relationships are discovered or arise, A&M will promptly file a supplemental declaration.

**Compensation**

10. Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable United States Trustee guidelines, and the Local Rules of this Court, A&M will seek from the Debtor payment for compensation on an hourly basis subject to the cumulative cap as described in engagement letter as amended and reimbursement of actual and necessary expenses incurred by A&M. A&M's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals

assigned to this engagement are outlined in the Application. These hourly rates are adjusted annually.

11. To the best of my knowledge, (i) no commitments have been made or received by A&M with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) A&M has no agreement with any other entity to share with such entity any compensation received by A&M in connection with this chapter 11 case.

12. By reason of the foregoing, I believe A&M is eligible for employment and retention by the Debtor pursuant to sections 327(a) (as modified by sections 1107(b)), 328, 330 and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Dated this 20th day of Dec 2016

By: /s/ [signature]
Ronald Winters
Managing Director

Sworn to and subscribed before
me this 20th day of Dec., 2016
/s/ Andrea Gomez
Notary Public
Notary Public State of ~~New York~~ Iowa
No. 787111
Qualified in _______ County
Commission Expires 11/18/2017

NOTARIAL SEAL IOWA
ANDREA GOMEZ
Commission Number 787111
My Commission Expires
November 18, 2017

**Schedule A [List of Potential Parties in Interest]**

# Schedule A

## List of Potential Parties in Interest

**VENDORS**
HEALTH ENTERPRISES
MCFARLAND CLINIC PC
ICE TECHNOLOGIES
IOWA HEART CENTER PC
MCKESSON TECHNOLOGIES INC
SOUND PHYSICIANS
ARAMARK CLINICAL TECH SERVICES
HEALOGICS WOUND CARE &
IOWA ORTHOPAEDIC CENTER PC
IOWA MEDICAID ENTERPRISES
ARAMARK CORPORATION
RESOLUTION
ALCON LABORATORIES INC
MARSHALL COUNTY TREASURER
NURSE ANESTHESIA OF NC
RELAY HEALTH
MARY GREELEY MEDICAL CENTER
PHYSIOTHERAPY ASSOCIATES
ALLIANT ENERGY/IPL
MCGUIRE WOODS
DELTA LOCUM TENENS LLC
HOLLIS COBB
BIOMET INC
TRIAGE NURSING LLC
MARCO
GE HEALTHCARE
MEDICAL SOLUTIONS
CRIMSON
CARDINAL HEALTH
IOWA ENT CENTER
STRYKER ENDOSCOPY
CTL CONSULTING
ATHENA HEALTH
SCHUMACHER
ABBOTT VASCULAR
RSM US LLP
CARDINAL HEALTH 110 LLC
JUNIPER ADVISORY
VAX SERVE INC
MCFARLAND CLINIC
ALLIANT ENERGY
SCRIBEAMERICA
COMPARION MEDICAL ANALYTICS
CAREFUSION SOLUTIONS LLC
US FOODS
HMI LLC
COMPHEALTH
CITY OF MARSHALLTOWN
NEARTERM CORP
C & A INDUSTRIES INC
SHI INTERNATIONAL CORP
VOCERA COMMUNICATIONS
EXECUTIVE HEALTH RESOURCES
CPSI
JARRARD PHILLIPS CATE & HANCOCK
CARDINAL HEALTH NUCLEAR PHARM
SMITH NEPHEW ORTHOPAEDIC
CENTURYLINK BUSINESS SVC
ABM ONSITE SERVICES-MIDWEST INC
G&K SERVICES-DES MOINES
MEDTRONIC USA INC
QUEST DIAGNOSTICS
MCKESSON MEDICAL-SURGICAL
ALERE INFORMATICS INC
RN NETWORK
OFFICE MAX
SYMETRA LIFE INSURANCE COMPANY
HARMONY HEALTHCARE
IOWA COMMUNICATIONS NETWORK
LANGUAGE ACCESS NETWORK LLC
ZIXCORP
OPTUM ATTEN: MSC 41083
REPUBLIC HEALTH RESOURCES LLC
FLEX CARE MEDICAL STAFFING
FIRST PARTY RECEIVABLES SOLUTION
LANE & WATERMAN LLP
STRYKER INSTRUMENTS
COREPOINT HEALTH, LLC
BRENTWOOD COMMUNICATIONS INC.
TRILLIANT SURGICAL
SYSMEX AMERICA INC
US BANK EQUIPMENT FINANCE
THE QUEST GROUP
NATIONAL MEDICAL SERVICES
SEIM JOHNSON, LLP
ADVANTAGE RN LLC
HOLOGIC INC
MIDAMERICAN ENERGY
BAIRD HOLM LLP
SHARED MEDICAL SERVICES, INC
SMITH NEPHEW ENDOSCOPY
OWENS & MINOR DIST INCORP
AVESIS THIRD PARTY ADMINISTRATORS INC
CLINICAL COMPUTER SYSTEMS INC
AMN HEALTHCARE, INC
ELSEVIER
IOWA WORKFORCE DEVELOPMENT
STATE HYGENIC LABORATORY
CONSUMERS ENERGY
DIAMOND HEALTHCARE COMMUNICATIONS
CARESTREAM HEALTH INC
SANOFI PASTEUR, INC
LAMAR COMPANIES
LIFE NET HEALTH
OLYMPUS AMERICA INC
SODEXO CTM LLC
MANPOWER INC
LMC INSURANCE & RISK MANAGEMENT INC
MOBILE INSTRUMENT SERVICE
RCM TECHNOLOGIES
STERIS CORPORATION
BVK DIRECT
CARE FUSION SOLUTIONS LLC
NURSES PRN
THE ROBERTS GROUP
OPTUM
PHARMEDIUM SERVICES LLC
LIFESERVE BLOOD CENTER
SCHUMACHER ELEVATOR COMPANY
PC CONNECTION
SKS COMMUNICATIONS
SSI GROUP INC
CAREFUSION
ACCLARENT
COMPRESSED AIR & EQUIP INC
PROCARE USA LLC
CENTURYLINK
BAKER GROUP

**KNOWN AFFILIATES**
CENTRAL IOWA HEALTHCARE FOUNDATION FKA MMSC FOUNDATION

**BOARD OF TRUSTEES**
JACQUE GOODMAN
CAROL HIBBS
JIM LOWRANCE
MIKE MASON
KEVIN SWARTZ
STEPHEN VAN BUREN
SUE MARTIN
SHARON GREER
KIMBERLE SHRYVER
MIKE MCCARTY
JOE POLLPETER

**LENDORS/LESSEES**
WELLS FARGO
KEY GOVERNMENT FINANCING
GE CAPITAL
CCA FINANCIAL
US BANK
CBC MARSHALLTOWN
GREAT WESTERN BANK
UNITED BANK

**OFFICERS**
DAWNETT WILLIS

**MAJOR PAYORS**
BLUE CROSS BLUE SHIELD OF IOWA
WELLMARK
IOWA MEDICAID ENTERPRISES
CENTER FOR MEDICARE & MEDICAID SERVICES

**RESTRUCTURING PROFESSIONALS**
SUGAR FELSENTHAL GRAIS & HAMMER
BRADSHAW FOWLER PROCTOR & FAIRGRAVE
JUNIPER ADVISORY
HAMMOND HANLON CAMP LLC
BELIN MCCORMICK

**PENDING & POSSIBLE LITIGATION**
BEYER LAW LLC
BALDERSON LAW PLLC
KOUKOL & JOHNSON LLC
VAN LIESHOUT LAW OFFICE
KOHNER MANN & KAILAS
ADAMS EVENS & ROSS
JONATHAN NEIL & ASSOCIATES
D&S GLOBAL SOLUTIONS
CST CO.
LUBINUS LAW FIRM
RECEIVABLES CONTROL CORPORATION
RECEIVABLES MANAGEMENT SERVICES CORPORATION
BILATERAL CREDIT
BROWN & JOSEPH
NELSON LAW FIRM, PLLC
AG ADJUSTMENTS
HAYNSWORTH SINKLER BOYD PA
MCKENZIE BECKER & STEVENS, INC
SBRK LAW GROUP

**INSURANCE**
SYMETRA LIFE INSURANCE COMPANY
CHUBB
MIDWEST MEDICAL INSURANCE
UNITED HEARTLAND
DELTA DENTAL
WELLMARK
AVESIS

**DEBTORS**
CENTRAL IOWA HEALTHCARE FKA MARSHALLTOWN MEDICAL & SURGICAL CENTER

**CONTRACT COUNTER PARTIES**
JRCERT
AMERICAN MEDICAL RESPONSE
NURSE ANESTHESIA OF NORTH CAROLIA
BAXTER
CONRAD FIRE DEPARTMENT
KELLOGG
KEY EQUIPMENT FINANCE
MARSHALLTOWN FIRE DEPT.
STORY COUNTY MEDICAL CENTER
THOMAS BENZONI
TRAER
WELLSBURG
HOSPITAL RESPITE CARE
MOBILE INTENSIVE CARE SERVICE - MARY GREELEY
RESPITE CARE SERVICES
AMERIGROUP
CTL CONSULTING
MEDICAP PHARMACY
REGISTERED DIETICIAN SERVICES
ADVANTAGE COMPANIES, THE
AETNA BETTER HEALTH
AIRGAS PURITAN MEDICAL
ALLEN COLLEGE
AMERICAN HEART ASSOCIATION
AMERICAN RECYCLING
AMERIHEALTH CARITAS
AMI CARDIAC MONITORING
AMS STORE AND SHRED, LLC
APS MEDICAL BILLING
AUREUS MEDICAL MANAGEMENT SERVICES
BAKER HEALTHCARE CONSULTING, INC.
BARTON ASSOCIATES
BCLUW SCHOOL
BIOMERIEUX, INC.:
BKD CPAS & ADVISORS
BLOOD CENTER OF IOWA, THE
BLUE CROSS/BLUE SHIELD OF IA
CARE COMMUNICATIONS, INC.
CARE INITIATIVES HOSPICE
CATHOLIC HEALTH INITIATIVES/MERCY MEDICAL
CEDAR VALLEY COMMUNITY
CENTER ASSOCIATES, INC.
CHEM-AQUA
CHEST, INFECTIOUS DISEASES & CRITICAL CARE ASSOCIATES, PC
CHILD ABUSE PREVENTION SERVICES
CHOICECARE
CHYMA'S MACHINE & WELDING SHOP
CIMRO
CIOX
CLARKE COLLEGE, DUBUQUE
CLARKSON COLLEGE
CLINIC BUILDING COMPANY, INC. (CBC)
CLINICAL COMPUTER SYSTEMS INCORPORATED
CMI, INC.
COMPARION MEDICAL ANALYTICS, INC.
COMPLIANCE TEAM
CONRAD, CITY OF
COOPORTUNITY
CRAWFORD HEALTHCARE, INC.
CRETEX CONCRETE PRODUCTS
DATABASE SOLUTIONS - BAA
DEA REGISTRATION
DES MOINES AREA COMMUNITY COLLEGE-DMACC
DFM DIETARY FOOD MANAGEMENT
DIGICHART
DISCHARGE 1-2-3 (CALLIBRA)
DONOVAN, CONSTANCE "CONNIE"
EDI SUPPORT SERVICES
ELAVON
EMERGENCY PRACTICE ASSOCIATES
EMERGENCY TRAUMA FUND
ENCOMPASS/ROCHE
FFF ENTERPRISES, INC.
FIRST ADVANTAGE
FIRST NURSE SERVICE AGREEMENT (MARY GREELEY)
FISHER GOVERNOR FOUNDATION
GARNER DIALYSIS (DAVITA)
GE HEALTHCARE PARTNERS
GEORGIA PACIFIC
GLENWOOD PLACE
GRANDVIEW HEIGHTS
GRAPETREE COMPLETE AGREEMENT
H&R ACCOUNTS/PREFERRED MEDICAL DEPOSIT
HALOGEN SOFTWARE
HALVORSON TRANE - TRANE AND CARRIER
HAMMOND HANLON CAMP LLC
HAWKEYE COMMUNITY COLLEGE
HCCS HIM SERVICES
HEALTH ENTERPRISES PHARMEDIUM
HEALTH ENTERPRISES THERAPY SERVICES
HEALTH INSURANCE BENEFITS - CLINICS
HEALTH VENTURES OF CENTRAL IOWA, LLC
HILL-ROM COMPANY, INC.
HOSPICE COMPASSUS/AMENITY HEALTHCARE
HOSPITAL ENGAGEMENT NETWORKS (HEN)
HOSPITAL QUALITY REPORT SUPPORT CENTER
HOV SERVICES/LASON SYSTEMS
HUMANA/CHOICE CARE NETWORK
IFMC/TELLIGEN/KEPRO:
IMMUNIZATION REGISTRY INFORMATION SYSTEM (IRIS)
INDIAN HILLS COLLEGE STUDENTS
INDIAN HILLS COLLEGE:
INTEGRATED TELEHEALTH PARTNES
INTELLIGENT MEDIAL OBJECTS (IMO)
IOWA DEPT OF PUBLIC HEALTH:
IOWA DONOR NETWORK
IOWA GOVERNOR'S STEM ADVISORY COUNCIL
IOWA HEALTH HOME CARE
IOWA HEART CENTER
IOWA HOSPICE
IOWA HOSPITAL ASSOCIATION:
IOWA LIONS EYE BANK
IOWA RIVER HOSPICE:
IOWA STATE UNIVERSITY
IOWA TOTAL CARE
IOWA VALLEY COMMUNITY COLLEGE
IOWA VETERANS HOME
IOWA VETERANS HOME
JA THOMAS & ASSOCIATES
JEROLD PANAS, LINZY & PARTNERS
KIRKWOOD COMMUNITY COLLEGE
KRONOS
LAB CORP
LANDAUER/PREMIER CONTRACT
LAVERNE HAND
MAMMOTOME
MARSHALL COUNTY BOARD OF HEALTH
MARSHALL COUNTY COMMUNICATIONS CENTER

# Schedule A

## List of Potential Parties in Interest

**VENDORS**

IOWA POISON CONTROL CENTER
TOPJOBZ INC
VERIZON WIRELESS
IOWA ORTHO
PRIMEFORCE MEDICAL CORP.
VERITY SOLUTIONS, INC.
STAPLES ADVANTAGE
WINMAGIC
JOHNSON JOHNSON HEALTH CARE
STATE HYGIENIC LABORAT
SMITH NEPHEW HEALTHCARE DIV
IOWA RURAL HEALTH TELECOMMUNICATIONS PRO
HEALTHCARE CODING & CONSULTING SERVICES
VOLCANO CORP
PFIZER INC
STRYKER ORTHOPAEDICS
MEDICAL REVENUE SOLUTIONS, LLC
PRESS GANEY ASSOCIATES INC
HEALTH INFORMATION MANAGEMENT
ZIMMER US INC
NYEMASTER GOODE
WOLIN ELECTRIC LC
TOSHIBA AMERICA MEDICAL SYSTEM
AIRGAS
CLAIMS SOLUTIONS LLC
R VISIONS MEDICAL STAFFING
DEPUY SYNTHES
SMITH NEPHEW WOUND MGMNT
IMEDX INC
DIETARY FOOD MANAGEMENT
STERICYCLE INC
WHITFIELD AND EDDY PLC
BENEFITFOCUS.COM, INC
BAYER HEALTHCARE
MILLIMAN
RTI SURGICAL
DJO SURGICAL
WELLMARK BLUE CROSS BLUE SHIELD OF IOWA
CIC ASSOCIATES PC
3M
SURGICAL PRODUCT SOLUTIONS
MASIMO AMERICAS INC
ARTHREX INC
RECEIVABLE SOLUTIONS INC
MCKESSON SPECIALTY CARE DIST
JAEGER CORPORATION
ELECTRONIC ENGINEERING
DEVICOR MEDICAL PRODUCTS
BIO-TISSUE INC
UNITED WAY
MERCY CLINICAL LABORATORY
HEALTHPORT
PROTOCOL AGENCY, INC
BARD
SUPERIOR CLEANING INC
TAMA COUNTY TREASURER
BOSTON SCIENTIFIC CORPORATION
MICRO SURGICAL TECHNOLOGIES
HEALTHCAST,INC
MAGELLAN HEALTHCARE
UNITED HEALTHCARE RECO
ARAMARK REFRESHMENT SERVICE
PROTOCOL AGENCY INC
CIOX HEALTH
PRECISION LENS
BAXTER HEALTHCARE CORP
OPTUM ATEN:MSC 410833
XEROX CORPORATION
WOODMAN CONTROLS
CALLIBRA / INNOVATIVE PROJECTS LAB INC
MERCY MEDICAL CENTER
IBM CORPORATION
SKILL SURVEY INC
A1 MEDICAL GAS, INC
RECORD AUTOMATIC DOORS INC
THE INGENUITY COMPANY
GRAINGER
SPECTRANETICS CORPORATION
PATIENTEDUCATION INSTITUTE
ORGANOGENESIS INC
STRYKER SALES CORPORATION
OMG MIDWEST INC
BARNES THORNBURG
KOUKOL & JOHNSON LLC
CONVERGENCE CONSULTING GROUP
FROEHLICH COMMUNICATIONS, INC
TRANE US INC

**CONTRACT COUNTER PARTIES**

MARSHALL COUNTY EMERGENCY MANAGEMENT AGENCY
MARSHALL COUNTY EMERGENCY MED. SERVICES ASSOC.
MARSHALL COUNTY NURSING FACILITIES
MARSHALL COUNTY PUBLIC HEALTH & HC+
MARSHALLTOWN FIRE DEPARTMENT AMBULANCE ASSISTANCE CALLS
MARSHALLTOWN MOB 1 MANAGING MEMBER LLC (MARY PFANTZ HAS CONTRACT)
MARSHALLTOWN MUNICIPAL TRANSIT
MARSHALLTOWN OB/GYN:
MARSHALLTOWN ORTHOPAEDICS, P.C.
MARSHALLTOWN ORTHOPEDICS
MARY GREELEY MEDICAL CENTER MOBILE INTENSIVE CARE
MAXIM HEALTHCARE SERVICES, INC.
MAYO MEDICAL LABORATORIES
MCCOWN GORDON CONSTRUCTION
MCFARLAND CLINIC (DANE HAS 4 CONTRACTS)
MED MEDIA, INC.
MEDEFIS, INC.
MEDIACOM
MEDICAID
MEDICAL TECHNOLOGY ASSOCIATES (MTA)
MEDICARE
MENTAL HEALTH CENTER OF MID-IOWA LTR OF UNDERSTANDING
MERCY BEHAVIORAL HEALTH SERVICES
MERCY COLLEGE OF HEALTH SCIENCES:
MERCY MEDICAL CENTER-DES MOINES
MERIDIAN HEALTH PLAN
MICOR ENTERPRISES/VILLA DEL SOL
MICROSOFT CHANGE OF SOFTWARE ADVISORY
MIDAMERICAN ENERGY
MID-IOWA COMMUNITY ACTION, INC.
MIDLANDS CHOICE
MIDWEST ELECTRONIC RECOVERY
MINNESOTA NURSES ASSOCIATION (UNC)
MOLINA HEALTHCARE
MOUNT MARTY COLLEGE
MSDS ONLINE
NATIONAL HEALTHCARE SAFETY NETWORK (NHSN)
NEIL M DAVIS ASSOC T/A MEDABBREV.COM
NEWTON FIRE DEPARTMENT
NIHON KOHDEN
NORTH IOWA AREA COMM. COLLEGE
NORTHEAST IOWA COMMUNITY COLLEGE
NORTHERN SHARED MEDICAL SERVICES, INC.
NOVOPATH, INC.
NPDB NATIONAL PRACTITIONER DATA BANK
NUCARA PHARMACY
NUCO2, INC.
ONESOURCE
OPTION CARE OF EAST CENTRAL IOWA
ORTHO-CLINICAL DIAGNOSTICS
OXFORD
PAPERLESS PAY CORPORATION
PAYPAL, INC & RELAYHEALTH
PD-RX PHARMACEUTICALS, INC.
PEOPLERIDES CONTRACT
PRIMARY HEALTHCARE DENTAL CLINIC
PRIME HEALTH SERVICES
PROVIDER INSIGHTS
QSOLUTIONS, INC.
RAILROAD MEDICARE
REFERENCE LABS AVAILABLE TO MMSC
RELAYHEALTH CLINICAL SOLUTIONS
REPORTINGMD
RITCHIE INDUSTRIES, INC.
ROLLING GREEN VILLAGE
SALUCRO HEALTHCARE SOLUTIONS
SIEMENS MEDICAL SOLUTIONS
SKILL SURVEY PRE-HIRE 360
SOLIANT HEALTH
SOUTH FLORIDA UTILIZATION REVIEW
SOUTHRIDGE NURSING AND REHAB CENTER
SOUTHRIDGE SPECIALY CARE
SOYRING CONSULTING
SPACELABS HEALTHCARE
SQUAREWAVEFORM ANESTHESIOLOGY
ST. AMBROSE UNIVERSITY
ST. MARY
STATE CENTER NURSING FACILITY
STEBNISKI, SHERRI PA
STERICYCLE, INC.
STRATOSE
SUGAR FELSENTHAL GRAIS & HAMMER
SUNNY HILL CARE CENTER
SWANK HEALTHCARE
SYED, SALAHUDDIN, MD, PC
SYSMEX:
T.L.C./TENDER LAWN CARE
TAKEFORM
TECH ONE BIOMEDICAL SERVICES, INC
TERRILL, RONALD MD (AMENDMENT)
THE CODING NETWORK
THE QUALITY INITIATIVE
THREE RIVERS PROVIDER NETWORK
THREE RIVERS PROVIDER NETWORK, INC.
TINGLE, MICHELE
TRANSTECH MEDICAL SOLUTIONS
TRUBRIDGE, LLC
TUSK ENTERPRISE
UNITED HEALTHCARE (SECURE HORIZONS)
UNITED STATE ENVIRONMENTAL PROTECTION AGENCY
UNIVERSATA, INC.
UNIVERSITY OF ILLINOIS
UNIVERSITY OF IOWA
UNIVERSITY OF IOWA - TELEMEDICINE
UNIVERSITY OF IOWA:
UPPER IOWA UNIVERSITY
UPTODATE
VA CENTRAL IOWA HEALTH CARE SYSTEM
VANGUNDY, MILT
VAZQUEZ-MADERA, YARED
VENTURE MANAGEMENT, LLC
VILLA DEL SOL
VISTA STAFFING SOLUTIONS
VOLCANO
WAHL TEK
WATSON MEDICAL LOGISTICS, LLC
WELLSBURG AMBULANCE SERVICE
WORLDWIDE TRAVEL STAFFING LIMITED
WRIGHT MEDICAL TECHNOLOGY
ZIEGLER CAT POWER SYSTEMS:

# Schedule B

**Central Iowa Healthcare**

**Current and Former Clients of A&M and/or its Affiliates** [1]
3M
Abbott Vascular
Aetna Better Health
Aramark Clinical Tech Services
Arthrex Inc.
Baxer Healthcare Corp.
Bayer Healthcare
Boston Scientific Corporation
Cardinal Health
Catholic Health Initiatives/Mercy Medical
CenturyLink Business Svc
ChoiceCare
CIOX Health
CMI, Inc.
CPSI
Elavon Inc.
First Advantage
FFF Enterprises, Inc.
GE Healthcare
Georgia Pacific
Great Western Bank
Healogics Wound Care
Hospice Compassus/Amenity Healthcare
Humana/Choice Care Network
IBM Corporation
Johnson & Johnson Healthcare
Key Government Financing
Lamar Companies
Maxim Healthcare Services, Inc.
McKesson Technologies Inc.
Medicaid
Molina Healthcare
Nihon Kohden
NuCO2, Inc.
Office Max
Olympus America Inc.
PayPal, Inc.
Physiotherapy Associates
Press Ganey Associates Inc.
Quest Diagnostics
RSM US LLP
Roche Diagnostics Corp.
Sanofi Pasteur, Inc.
Schumacher
Siemens Medical Solutions
Sound Physicians
Staples Advantage
Stryker Endoscopy
Toshiba America Medical System
Trane US Inc.
U.S. Bank Equipment Finance
U.S. Environmental Protection Agency
United Bank
United Healthcare (Secure Horizons)
United Way
University of Illinois
Verizon Wireless
Vocera Communications
W.W. Grainger
Wells Fargo
Wright Medical Technology
Zimmer US Inc.

**Significant Equity Holders of Current and Former A&M Clients**[2]
3M
Aetna Better Health
Alliant Energy/IPL
Baxer Healthcare Corp.
Bayer Healthcare
BioMerieux, Inc.
Catholic Health Initiatives/Mercy Medical
CenturyLink Business Svc
Convergence Consulting Group
First Advantage
GE Healthcare
Georgia Pacific

[1] A&M and/ or an affiliate is currently providing or has previously provided certain consulting or interim management services to these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, to their portfolio or asset managers or their affiliates) in wholly unrelated matters.

[2] These parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds or trusts managed by such managers) are significant equity holders of clients or former clients of A&M or its affiliates in wholly unrelated matters.

**Central Iowa Healthcare**

Great Western Bank
Humana/Choice Care Network
IBM Corporation
Johnson & Johnson Healthcare
Key Government Financing
Lifeserve Blood Center
McKesson Technologies Inc.
Medtronic USA Inc.
Meridian Health Plan
PayPal, Inc.
Pfizer Inc.
Siemens Medical Solutions
Smith Nephew Orthopaedic
Stryker Endoscopy
Toshiba America Medical System
U.S. Bank
Wells Fargo

**Creditors/Noteholders in A&M Engagements**[3]

3M
Abbott Vascular
Aetna Better Health
Alcon Laboratories Inc.
Aramark Clinical Tech Services
Barnes Thornburg
Bayer Healthcare
Boston Scientific Corporation
Cardinal Health
Carestream Health Inc.
Catholic Health Initiatives/Mercy Medical
Center for Medicare & Medicaid Services
CenturyLink Business Svc
GE Healthcare
Georgia Pacific
Hil-Rom Company, Inc.
Hologic Inc.
IBM Corporation
Johnson & Johnson Healthcare
Kellogg Company
Key Government Financing
McKesson Technologies Inc.
Medicaid
Medtronic USA Inc.
Mobile Instrument Service
OneSource
Owens & Minor
SHI International Corp.
Siemens Medical Solutions
Sodexo CTM LLC
Stryker Endoscopy
U.S. Bank
U.S. Foods
Verizon Wireless
Wells Fargo
Wright Medical Technology
Zimmer US Inc.

**Professionals & Advisors**[4]

Barnes Thornburg
BKD CPAs & Advisors
Lane & Waterman LLP
McGuire Woods
Milliman
RSM US LLP

**Significant Joint Venture Partners**[5]

3M
Bayer Healthcare
Catholic Heart Initiatives
CBC Marshalltown
GE Healthcare

[3] A&M is currently advising or has previously advised these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds managed by such managers) as noteholders or creditors or various creditors' or noteholders' committees in which these parties or their affiliates were members or which represented the interests of these parties or their affiliates.

[4] These professionals have represented clients in matters where A&M was also an advisor (or provided interim management services) to the same client. In certain cases, these professionals may have engaged A&M on behalf of such client.

[5] These parties or their affiliates are significant joint venture partners of other clients or former clients of A&M or its affiliates in wholly unrelated matters.

Health Enterprises Therapy Services
IBM Corporation
Medicaid
Olympus America Inc.
Siemens Medical Solutions

**A&M Vendors**[6]

Aetna Better Health
American Heart Association
Aramark Clinical Tech Services
Benefitfocus.com, Inc.
BVK Direct
Convergence Consulting Group
GE Healthcare
IBM Corporation
Key Government Financing
Manpower Inc.
Maxim Healthcare Services, Inc.
OneSource
Oxford Health
PC Connection
RSM US LLP
SHI International Corp.
Sodexo CTM LLC
Staples Advantage
Toshiba America Medical System
U.S. Bank
United Way
Verizon Wireless
W.W. Grainger
Wells Fargo

[6] These parties or their affiliates provide or have provided products, goods and/or services (including but not limited to legal representation) to A&M and/or its affiliates