## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No.  16-02438-11als |
| | ) | |
| **CENTRAL IOWA HEALTHCARE** | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | Hon. Anita L. Shodeen |
| | ) | |
| 3 South 4th Avenue | ) | **DEBTOR'S MOTION FOR ORDER** |
| Marshalltown, IA 50158 | ) | **AUTHORIZING SALE OF ASSETS** |
| | ) | **FREE AND CLEAR OF LIENS,** |
| EIN: 42-0948420 | ) | **CLAIMS AND ENCUMBRANCES** |
| _____ | ) | |

Central Iowa Healthcare ("*CIH*" or "*Debtor*"), Debtor and Debtor-in-Possession in this Chapter 11 case herein, by and through its General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., and its Special Healthcare Reorganization Counsel, Mark S. Melickian of the law firm of Sugar, Felsenthal, Grais & Hammer LLP, respectfully submit this Motion for Order Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers.  In support of this Motion ("*Motion*"), the Debtor states as follows:

1.      Debtor commenced the captioned case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("*Bankruptcy Code*") on December 20, 2016 (the "*Petition Date*").

2.      Debtor continues to operate its businesses and manage its property as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

3.      A healthcare ombudsman was appointed on December 23, 2016.  (Dkt. 49).

4.      An Official Committee of Unsecured Creditors ("Committee") was appointed on December 28, 2016.  (Dkt. 58, with notices amending membership at dkts. 71, 185, and 220).

5.      No trustee or examiner has been appointed in this case.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein include Bankruptcy Code §§ 105(a), 363, 365 and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedures (the "*Bankruptcy Rules*").

BACKGROUND

7.      As of the Petition Date, CIH had received inquiries and an offer to purchase substantially all of CIH's assets (the "*Sale*") from UnityPoint Health – Waterloo ("*UnityPoint*"). UnityPoint has since withdrawn its APA. The Debtor remains in discussions with UnityPoint as well as with other interested parties, and wishes to proceed to a structured marketing and auction process which the Debtor believes will result in a sale of the Assets to another healthcare operator.

8.      CIH's bid procedures ("*Bid Procedures*") are attached hereto as **Exhibit A** and are incorporated by reference herein. The Bid Procedures have been reviewed by the Committee and the Office of the United States Trustee.

9.      CIH believes that a sale of Assets following a structured marketing process and an auction held pursuant to bids submitted in accordance with the Bid Procedures is in the best interest of Debtor's estate and its creditors.

10.     By this Motion, CIH seeks authority to solicit bids and sell substantially all of its assets (the "*Assets*") at auction ("*Auction*"), without a "stalking horse" bidder.

11.     CIH has retained Juniper Advisory LLC ("Juniper") as its investment banker to continue to market the Assets and run an auction process to determine the highest and best bid

for the Assets.  A motion to approve Juniper's retention has been filed and is pending before the Court.  (Dkt. 227).

12.    CIH believes that the marketing and auction process and the transaction contemplated by this Motion are in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.  CIH's mission is the provision of patient care and health care services to the communities it serves.  The proposed marketing effort and orderly auction and sale process will allow for the continuation of primary acute-care and clinical outpatient healthcare services in the City of Marshalltown while preserving and producing value for the benefit of the estate and its creditors.

### DESCRIPTION OF THE DEBTOR

13.    CIH is a not-for-profit corporation formed under the laws of the State of Iowa, and is tax exempt pursuant to section 501(c)(3) of the Internal Revenue Code.  CIH is governed by a 14-member Board of Trustees of which two members serve on an ex-officio basis.

14.    CIH operates a community hospital in Marshalltown, Iowa, which is located between Des Moines and Cedar Rapids.  CIH's 49-bed, acute care facility is the only full-service medical center in the area. CIH provides inpatient, outpatient, emergency care, and medical clinic services at several locations for the residents of Marshall, Tama, and Grundy counties. These counties combined have a population of over 60,000 and are home to several large companies that are significant local employers. CIH is the sixth largest employer in Marshalltown. According to U.S. Census 2015 data, Marshalltown's population is estimated at 27,620 and a median income of $50,396.

15.    In addition to the community hospital located in downtown Marshalltown, CIH owns several parcels of improved real estate in and around Marshalltown at which various

medical services are provided, including  a clinic system with three locations located in Toledo, Iowa (Tama County),   State Center, Iowa (Grundy County) and Conrad, Iowa (Marshall County).  The Debtor also operates a state of the art outpatient clinic at a new 75,000 square foot facility located on the south side of Marshalltown at the confluence of two major state highways (Hwy14 and Hwy 30).

16.     Declining revenues over the past several years have placed a considerable financial strain on CIH and led to uncertainty about the hospital's ability to continue as a going concern.  The circumstances that have led CIH to filing this bankruptcy case are described in more detail in the *Declaration of Dawnett Willis*, Acting Chief Executive Officer, filed in this case, which is incorporated in its entirety into this motion.  (Dkt. 28).

## PREPETITION MARKETING EFFORTS

17.     CIH initially hired Juniper in February of 2016 to solicit interest from other parties who may wish to enter into a business combination transaction or other commercial arrangement with the System. Juniper acted as CIH's exclusive advisor to assist in evaluating proposals and determining whether or not to pursue a transaction. Juniper ultimately contacted twenty-three (23) healthcare organizations inquiring about potential interest in a possible transaction.  Although that effort spawned one letter of intent from a potential partner, that potential partner subsequently withdrew interest in August of 2016.

18.     On September 21, 2016, CIH retained Alvarez & Marsal Healthcare Industry Group, LLC to act as financial advisor and assist CIH in certain financial, operational and reorganization efforts.

19.     Ultimately, CIH engaged in discussions with UnityPoint which culminated in an agreement to purchase CIH's assets and a motion filed by the Debtor to approve UnityPoint as a

stalking horse bidder in furtherance of an auction process. UnityPoint has since withdrawn its asset purchase agreement. However, the Debtor wishes to proceed with the marketing and auction process proposed herein, culminating with a hearing to approve the sale of Assets to one or more purchasers of the Debtor's Assets.

### RELIEF REQUESTED

20.    As stated above, CIH intends to sell the Assets and believes that an orderly sale of the Assets after a structured marketing period is the best way to maximize the value of the Assets for the benefit of creditors, patients, and other parties in interest.

21.    To ensure that CIH has maximized the value of the Assets, the sale of the Assets will occur following a marketing process run by Juniper and the acceptance of bids from interested parties pursuant to the Bid Procedures attached as **Exhibit A**.

22.    As noted in the Bid Procedures, the Debtor will accept bids until **March 13, 2017**, at 5:00 p.m. Central time, will inform all submitting parties of the acceptance of "Qualified Bids" on **March 14, 2017**, no later than 2:00 p.m. Central time, and will hold an auction at the offices of Debtor's counsel in Des Moines, Iowa, on **March 15, 2017**, commencing at 10:00 a.m. Central time.

23.    Bankruptcy Code Section 363 governs CIH's ability to sell property of the estate outside of the ordinary course of business. Although this section does not set forth a standard for determining when it is appropriate to authorize such a sale, courts have uniformly held that such a sale should be approved when it is justified by a sound business purpose. See In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d. Cir. 1983); Chrysler Group LLC v. South Holland Dodge, Inc., 862 F. Supp. 2d 661, 668 (E.D. Michigan 2012); In re Dewey & LeBoeuf LLP, No. 12–12321 (MG), 2012 WL 5386276, at *5 (Bankr. S.D.N.Y. Nov. 1, 2012); In re Nicole Energy

Services, Inc., 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008).  The burden of establishing a rational

business justification lies with the debtor. Nicole Energy, 385 B.R. at 230 (citing Lionel, 722

F.2d at 1070-71).  However, once the debtor makes such a showing, a presumption will attach

that the decision was made on an informed basis, in good faith and in the honest belief that the

action was in the best interest of the company. See, e.g., In re Brook Valley VII, Joint Venture,

496 F.3d 892, 900 (8th Cir. 2007).

24.     Applying Bankruptcy Code Section 363, courts afford debtors substantial

deference in formulating procedures for selling assets. See, e.g., In re Boston Generating, LLC,

440 B.R. 302, 329–330 (S.D.N.Y. 2010) (noting that the requirements for section 363 sales are

reviewed according to the deferential "business judgment" standard); In re Adelphia

Communications Corp., No. 02–41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y.

Mar. 4, 2003) (applying the "business judgment" standard presumption of validity and noting

that courts are "loath to interfere with corporate decisions absent showings of bad faith, self-

interest, or gross negligence").  Indeed, courts recognize that procedures intended to enhance

competitive bidding are consistent with the goal of maximizing the value received by the estate

and are appropriate in the context of bankruptcy sales. See, e.g., In re Dura Automotive Sys.,

Inc., No. 06–11202, 2007 WL 7728109, at *90 (Bankr. Del. Aug. 15, 2007) (finding that

"procedures intended to enhance competitive bidding are consistent with the goal of maximizing

the value received by the estate and therefore are appropriate in the context of bankruptcy

sales").

25.     Here, the proposed marketing process culminating in a sale of Assets is supported

by ample business justification and is reasonable and appropriate under the circumstances of this

case. The proposed marketing timeline will afford sufficient time for interested parties to prepare

bids in accordance with the Bid Procedures, and the Bid Procedures are designed to foster an

open, competitive and fair sale process, while maximizing the value the estate hopes to obtain for

the Assets.

26.     Furthermore, the Bid Procedures provide that CIH may consider issues such as

continuation of mission and the continuation of healthcare services in Marshalltown as a factor in

weighing bids. *See e.g.* In re United Healthcare System, Inc., No. 97–1159, 1997 WL 176574

(D.N.J. Mar. 26, 1997) (continuation of not for profit mission is a compelling factor in weighing

the debtor's sale of assets); *see also* In re HHH Choices Health Plan, LLC et al, 554 B.R. 697,

711-13 (Bankr. S.D.N.Y. 2016) (continuation of the mission to continue to provide senior

healthcare services was an important factor in considering and approving winning bid,

concluding that the approved bidder's mission "was more consistent with the mission of the

company").

27.     CIH therefore requests that the Court set a date to approve a sale of Assets to the

maker or makers of the highest and best bid(s) for the Debtor's Assets, as determined by the

Debtor in consultation with the Committee.

### THE PROPOSED SALE WILL SATISFY ALL APPLICABLE LEGAL STANDARDS

28.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a CIH

"after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." *See also* Bankruptcy Rule 6004(f)(1) ("All sales not in the ordinary

course of business may be by private sale or by public auction"). This section generally permits a

debtor to sell property of the estate outside of the ordinary course of its business where the

proposed sale is a sound exercise of the debtor's business judgment and when such sale is

proposed in good faith. See In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); In re Nicole

Energy Services, Inc., 385 B.R. 201, 210 (S.D. Ohio 2008) ("Under the law of this [Sixth] Circuit, the Court may approve a sale of all of a debtor's assets under § 363(b) 'when a sound business purpose dictates such action.'") (quoting Stephens Industries, Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)).

29.     In the instant case, the proposed sale of the Assets, following a fulsome marketing process and fair and open bidding structure in accordance with the Bid Procedures, constitutes a sound exercise of CIH's business judgment and has been proposed in good faith. First, an expeditious sale of the Assets will aid in minimizing the administrative expenses of CIH's estate, resulting in greater distribution to creditors. Second, such sale will increase the probability that operations will not be materially interrupted and customer and vendor relationships will be preserved. Finally, the sale represents the best opportunity for CIH to realize the value of the Assets on a going-concern basis, considering external factors in the marketplace.

30.     The Debtor believes this Motion, the Bid Procedures and the transactions contemplated thereby are in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.

31.     CIH submits that the factors described above, which support an expeditious sale of the Assets, are consistent with the traditional rationale for authorizing a sale outside of a Chapter 11 plan. See also In re Boston Generating, LLC, 440 B.R. 302, 321 (S.D.N.Y. 2010); Lionel, 722 F.2d at 1070.

### THE PROPOSED SALE WILL BE FREE AND CLEAR OF LIENS

32.     Bankruptcy Code § 363(f) authorizes a debtor to use, sell or lease property of the estate outside of the ordinary course of business, free and clear of any interest in such property. The Bid Procedures provide for the sale of the Assets free and clear of all interests, liens, claims

and encumbrances, including existing or asserted rights of first refusal, contractual restrictions on transferability or other similar protective rights.    Any such interests, liens, claims and encumbrances would attach to the proceeds of the sale of the Assets (the "*Sale Proceeds*") ultimately attributable to the property against or in which such interest, lien, claim or encumbrances is asserted.

33.    Under Bankruptcy Code § 363(f)(2), a sale free and clear of all interests, liens, claims and encumbrances is permissible if all parties asserting liens on or other interests in the assets consent. CIH is providing proper notice of this Motion to the United States Trustee, senior and other secured creditors, the Official Committee of Unsecured Creditors, counter-parties to executory contracts and unexpired leases, appropriate governmental authorities, and all other parties who have filed requests for special notice, thereby giving them the opportunity to object to this Motion. Provided no secured creditors object to this Motion, Section 363(f)(2) will be satisfied. See, e.g., In re Motors Liquidation Co., 430 B.R. 65, 72 (S.D. N.Y. 2010) (in a Chapter 11 case, noting that "secured lenders" approved a transaction under § 363(b) of the Bankruptcy Code and related transactions).

34.    Under Bankruptcy Code § 363(f)(4), a sale free and clear of all interests, liens, claims and encumbrances is permissible if the interest of any entity is in *bona fide* dispute. Under Bankruptcy Code § 363(f)(5), a sale free and clear of all interests, liens, claims and encumbrances is permissible if any party asserting an interest in the assets could be compelled to accept money satisfaction of such interest in a legal or equitable proceeding.  Any sale proposed by the Debtor will satisfy both elements.

### THE PROPOSED SALE IS NOT A SUB ROSA PLAN OF REORGANIZATION

35.    A sale of assets may not be approved where such sale, rather than merely changing the composition of the debtor's assets, either restructures the right of creditors or predetermines the rights of creditors under any future plan of reorganization. See In re Braniff Airways, Inc., 700 F.2d 935, 939–40 (5th Cir. 1983); In re Iridium Operating LLC, 478 F.3d 452, 465–66 (2nd Cir. 2007); In re Continental Air Lines, Inc., 780 F.2d 1223, 1227–28 (5th Cir. 1986).

36.    In Braniff, the Fifth Circuit held that an agreement between the debtor and its creditors established a *sub rosa* plan of reorganization because, among other things, the agreement: (a) required that any future plan of reorganization allocate certain assets only to employees, shareholders or unsecured creditors of the debtor; (b) required the secured creditors to vote a portion of their deficiency claim in favor of any future plan of reorganization approved by a majority of the unsecured creditors' committee; and (c) provided for the release of claims by all parties against the debtors, its secured creditors and its officers and directors. 700 F.2d at 939–40.

37.    Unlike the sale in Braniff, the transactions contemplated herein will not restructure the rights of the Debtor's creditors or predetermine the rights of such creditors under any future plan of reorganization.

38.    The value of the Assets will be tested in the marketplace via the auction and bid process.  At this point, the likelihood that a chapter 11 plan can be confirmed very quickly is doubtful, and further delay in seeking a sale of the Assets risks diminution in enterprise value given the Debtor's operational structure and external market forces. Given the prepetition marketing that took place starting in February of 2016, and the status of the Debtor's current

discussion with potential purchasers, the Debtor believes that it is time to proceed to a scheduled

auction and Sale Hearing at which the time the Debtor is confident that it will be in a position to

demonstrate that there are sound business justifications for selling the Assets now, rather than as

part of a plan.

### REDUCTION OR ELIMINATION OF 14-DAY STAY
### UNDER BANKRUPTCY RULES 6004(h) AND 6006(d))

39.     Time is of the essence in approving and closing the sale, and any unnecessary

delay in closing the sale could result in the collapse of the sale. Accordingly, this Court should

waive the 14-day period staying any order to sell or assign property of the estate imposed by

Bankruptcy Rules 6004(h) and 6006(d).

### CONCLUSION

Based upon the authorities and facts detailed above, the Debtor requests that the Court

establish **March 16, 2017**, commencing at 1:30 p.m. Central time, as the date and time of the

Sale Hearing, following the close of the Debtor's auction to be held on **March 15, 2017**.   The

Debtor submits that it will be in position to present to the Court at the Sale Hearing a proposed

transaction of the Debtor's Assets that is in the best interests of the Debtor, its estate and

creditors, its employees, its patients, and the City of Marshalltown, and that the decision to sell

the Assets, following a marketing process and in accordance with the Bid Procedures was within

the Debtor's sound business judgment, after careful deliberation of its consequences and possible

alternatives.

WHEREFORE**,** CIH respectfully requests that the Court hear this Motion and enter an

Order: (a) finding that due and adequate notice and an opportunity to be heard in accordance

with all applicable law were given to all creditors and interested parties in the Chapter 11 Case,

and any and all other affected or interested parties; (b) fixing **March 16, 2017**, commencing at

1:30 p.m. Central time, as the date and time for the hearing to approve the sale of Assets

pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens, encumbrances,

claims and interests, including but not limited to mortgage liens, personal property liens,

construction and mechanics' liens, judgment liens, rights of first refusal and all other claims; (c)

finding that the sale be effective immediately and that the stay provisions of Bankruptcy Rules

6004(h) and 6006(d) do not apply; and (d) providing such other relief as is just and proper under

the circumstances.

Date:  February 8, 2017                                        Respectfully submitted,


                                                              /s/  Jeffrey D. Goetz                              .
                                                              Jeffrey D. Goetz, Esq., IS #9999366
                                                              Bradshaw Fowler Proctor Bradshaw Fowler
                                                              Proctor & Fairgrave, P.C.
                                                              801 Grand Avenue, Suite 3700 Des Moines,
                                                              IA 50309-8004 515/246-5817
                                                              515/246-5808 FAX
                                                              goetz.jeffrey@bradshawlaw.com

                                                              General Reorganization Counsel for Central
                                                              Iowa Healthcare, Debtor and Debtor-in-
                                                              Possession

                                                              and

                                                              Aaron L. Hammer
                                                              Mark S. Melickian
                                                              Michael A. Brandess
                                                              Sugar Felsenthal Grais & Hammer LLP
                                                              30 N. LaSalle St., Ste. 3000
                                                              Chicago, IL 60602
                                                              ahammer@sfgh.com
                                                              mmelickian@sfgh.com
                                                              mbrandess@sfgh.com

                                                              Special Healthcare  Reorganization Counsel
                                                              for Central Iowa Healthcare, Debtor and
                                                              Debtor-in-Possession

**Certificate of Service**

This document was served electronically on all parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/ Barbara Warner

## Exhibit A

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No.  16-02438-11als |
| | ) | |
| **CENTRAL IOWA HEALTHCARE** | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | Hon. Anita L. Shodeen |
| | ) | |
| 3 South 4th Avenue | ) | |
| Marshalltown, IA 50158 | ) | |
| | ) | **BID PROCEDURES** |
| EIN: 42-0948420 | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

The above-captioned debtor and debtor in possession (the "*Debtor*")[1] has filed a chapter 11 case pending in the Bankruptcy Court for the Southern District of Iowa (the "*Bankruptcy Court*") under Case No. 16-02438-11als.   By motion dated February 8, 2017 (the "*Motion*"), the Debtor sought authority to sell assets related to the Debtor's healthcare business (the "*Assets*") pursuant to an auction process to determine the highest and best bid or bids for the Assets.  The Debtor will hold an auction (the "*Auction*") on **March 15, 2017**, commencing at 10:00 a.m. Central time, in the offices of counsel to the Debtor (as described in more detail in this notice).  Following the Auction, the Bankruptcy Court shall conduct a hearing (the "*Sale Hearing*") at which the Debtor shall seek entry of an order (the "*Sale Order*") authorizing and approving the sale of the Assets (the "*Proposed Sale*") to one or more other Qualified Bidders (as defined below) that the Debtor, in consultation with the Official Committee of Unsecured Creditors (the "*Committee*"), determines to have made the highest and best offer.

### Assets for Sale

The Debtor is offering the Assets for sale in one or more transactions, which are assets related to the Debtor's healthcare business.

### Participation Requirements

To participate in the bidding process and to receive access to due diligence (the "*Diligence Materials*"), a party interested in the Assets (a "*Potential Bidder*") must first deliver (unless previously delivered) to the Debtor the following:

1.  <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

substance acceptable to the Debtor (a "*Confidentiality Agreement*"); and

2. <u>Proof of Financial Ability to Perform</u>. Written evidence that the Debtor reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction.  Such information should include, *inter alia,* the following:

(a) the Potential Bidder's current financial statements (audited if they exist);

(b) contact names and numbers for verification of financing sources;

(c) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

(d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction; *provided* that the Debtor shall determine, in its reasonable discretion, in consultation with its professional advisors and with the Committee, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential  Bidder's financial qualifications.

The preliminary materials information must be provided to the Debtor's investment banker (address below) in order to further participate in the process:

Juniper Advisory LLC
191 North Wacker Drive, Ste.  900
Chicago, IL  60606
Attn:  Rex Burgdorfer
rburgdorfer@juniperadvisory.com

## **Access to Due Diligence Materials**

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. If the Debtor, after consultation with the Committee, determines that a Potential Bidder that has satisfied the requirements of subsections 1 and 2 above does not constitute a Qualified Bidder (defined herein), then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information from and due diligence access for Potential Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (defined herein) but may do so in its reasonable business judgment. The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders in connection with the Proposed Sale.

## **Bidding Process**

The Debtor, in consultation with its professional advisors and the Committee, shall:   (i) determine whether a Potential Bidder is a Qualified Bidder (defined herein); (ii)

coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "*Bidding Process*").

## Bid Deadline

**The deadline for submitting bids shall be <u>March 13, 2017</u>, at 5:00 p.m. (Central Time) (the "<u>Bid Deadline</u>").**

Prior to the Bid Deadline, a Bidder that desires to make an offer, solicitation, or proposal (a "<u>Bid</u>") shall deliver written copies of its Bid to:

1)    Debtor - Central Iowa Healthcare,  3 South 4th Avenue, Marshalltown, IA 50158, Attn:  Dawnett Willis;

2)    General Reorganization Counsel - Bradshaw, Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa 50309, Attn: Jeffrey D. Goetz;

3)    Special Healthcare Reorganization Counsel - Sugar Felsenthal Grais & Hammer LLP, 30 N. LaSalle St., Ste. 3000, Chicago, IL 60602, Attn: Mark S. Melickian;

4)    Financial Advisor to the Debtor – Alvarez & Marsal, 600 Madison Avenue, New York, NY 10022, Attn:  Ronald M. Winters;

5)    Investment Banker to the Debtor --  Juniper Advisory LLC, 191 North Wacker Drive, Ste. 900, Chicago, IL  60606, Attn:  Rex Burgdorfer;

6)    Patient Care Ombudsman, Susan G. Goodman, Mensch Clark Rothschild, 259 North Meyer Ave., Tucson, AZ 85701; and

7)    Counsel to the Official Committee of Unsecured Creditors —Pepper Hamilton LLP, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103, Attn: Francis J. Lawall and Pepper Hamilton LLP, 4000 Town Center, Suite 1800, Southfield, MI 48075, Attn: Deborah Kovsky-Apap.

NOTE:  You are <u>*not*</u> required to provide confidential financial information to the Patient Care Ombudsman, who will not be subject to a Confidentiality Agreement.

## Bid Requirements

To be eligible to participate in the Auction, each Bid and each Bidder submitting such a Bid must be determined by the Debtor, after consultation with the Committee, to satisfy each of the conditions set forth below. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

1.    <u>Good Faith Deposit</u>. Each Bid must be accompanied by a deposit (the "*Good Faith Deposit*") in the form of a certified check or cash payable to the order of the Debtor in an

amount equal to $1,000,000.

2.      Irrevocable. Each Bid must be irrevocable until the Bankruptcy Court enters the Sale Order; *provided* that if such Bid is accepted as the Prevailing Bid or Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable until two (2) business days after the Assets have been sold pursuant to the Sale Order (the "*Termination Date*").

3.      Executed Purchase Agreement. Each Bid must be accompanied by a proposed term sheet or asset purchase agreement to which the Bidder agrees to be bound, if acceptable to the Debtor in consultation with the Committee.

4.      Contingencies.   To be a valid Bid, such Bid must not be conditioned on obtaining financing or financing approvals, or on receipt of any internal corporate approvals.  A Bid may be conditioned on the outcome of reasonable due diligence – however, the more limited such requirements are, the more favorable the Debtor will consider the Bid.  A Bid may be subject to the accuracy in all material respects at the closing of the Proposed Sale of specified representations and warranties or the satisfaction in all material respects at the closing of the Proposed Sale of specified conditions.   Again, in weighing Bids, the Debtor, in consultation with the Committee, will materially consider the relative firmness of the respective offers.

5.      Financing Sources. Each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Proposed Sale satisfactory to the Debtor with appropriate contact information for such financing sources.

6.      Continuation of Health Care Services.   In reviewing Bids, in addition to the above financial components and evidence of financial wherewithal, the Debtor, in consultation with the Committee, will consider the impact of the proposed Bid and plans of the Bidder for the purchased Assets, the Bidder's mission and vision, and the impact on health care services in the Marshalltown area.

7.      No Fees Payable to Qualified Bidder. A Bid may not request or entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code section 503 related in any way to the submission of its Bid or the Bid Procedures.

8.      Bidding by Lots.  A Bid may propose to purchase only some of the Assets.  The Debtor, in consultation with the Committee, will consider the relative weight and merits of such Bids against any Bid to purchase substantially all of the Debtor's Assets, including whether to deem such a Bid a "Qualified Bid."

9.      Qualified Bidder and Qualified Bid.  A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid" and such Bidder shall constitute a "*Qualified Bidder*."

In the event that any Potential Bidder is determined by the Debtor, after consultation with the Committee, not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit with interest thereon, if any has accrued, within three (3) business days after that determination.

The Debtor shall have the right to reject any and all Bids that it believes, in its reasonable discretion after consultation with the Committee, do not comply with the Bid Procedures.

### Auction

If one or more Qualified Bids for the Assets are received by the Bid Deadline, the Debtor will conduct an auction (the "*Auction*") to determine the highest and best Qualified Bid or combination of Qualified Bids with respect to the Assets.   This determination shall take into account, among other things: (i) the amount and nature of the consideration, including any assumed liabilities; (ii) the total consideration to be received by the Debtor; (iii) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (iv) whether the Qualified Bid will satisfy all of the Debtor's secured debt; (vii) whether the Qualified Bid will satisfy all of the Debtor's accrued chapter 11 administrative claims, including (if applicable) those arising in connection with debtor in possession financing; (viii) whether the Qualified Bid will satisfy all of the Debtor's accrued priority claims; (ix) whether the Qualified Bid proposes to maintain the provision of healthcare services in Marshalltown; and (ix) any other considerations as the Debtor's fiduciary duty may require (the "*Bid Assessment Criteria*").

If no Qualified Bid is received by the Bid Deadline, the Debtor may determine not to conduct the Auction.

### Procedures for Auction

The Auction, if necessary, shall take place on **March 15, 2017** commencing at 10:00 a.m. (Central Time) at the offices of counsel for the Debtor, Bradshaw, Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa 50309, or other such place and time as the Debtor shall notify all Qualified Bidders. The Auction shall be conducted according to the procedures described below.

Only the Debtor and its professional advisors, the Committee's professional advisors, and Qualified Bidders, in each case, along with their representatives and counsel, shall attend the Auction in person, and only such Qualified Bidders will be entitled to make any Bids at the Auction.

No later than **March 14, 2017** at 2:00 p.m. (Central Time), the Debtor will (i) notify all Qualified Bidders of the highest and best Qualified Bid, as determined by the Debtor in the Debtor's discretion after consultation with the Committee (the "*Baseline Bid*"), and (ii) provide to all Qualified Bidders copies of all submitted bids.

The Debtor and its professionals duly-appointed by the Bankruptcy Court herein shall direct and preside over the Auction. Other than as expressly set forth herein, the Debtor may

conduct the Auction in the manner it determines will result in the highest, best, or otherwise financially superior offer for any of the Debtor's Assets.

## Terms of Overbids

An "*Overbid*" is any Bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

1.      Minimum Overbid Increments: Any Overbid after and above the Baseline Bid shall be made in increments of at least $100,000 in cash. Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash and/or other consideration acceptable to the Debtor.

2.      Remaining Terms are the Same as for Qualified Bids: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; *provided* that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtor after consultation with the Committee), a Qualified Bidder submitting an Overbid must submit at the Debtor's request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, after consultation with the Committee) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

## Announcing Overbids

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid. Before the commencement of each round of bidding, the Debtor, after consultation with the Committee, shall announce the Overbid deemed at that time to be the highest and best Bid.

## Backup Bidder

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Bid or combination of Bids at the Auction, as determined by the Debtor, in the exercise of its business judgement after consultation with the Committee, will be designated as the potential backup bidder (collectively, the "*Potential Backup Bidder*").   The party so designated must consent to such designation.

In the event that one or more Qualified Bidders are identified by the Debtor as a Potential Backup Bidder, and such Bidder(s) accept the designation, such Qualified Bidder or Qualified Bidders shall serve as backup bidder(s) (collectively, the "*Backup Bidder*").   In the case of multiple Backup Bidders, the Debtor may designate a priority to such Bidders (e.g., the

first Backup Bid, the second Backup Bid, and so on).  A Backup Bidder shall be required to keep its initial Bid or combination of Bids (or if the Backup Bidder submitted one or more Overbids at the Auction, the final respective Overbid) (the "<u>Backup Bid</u>") open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date that is 30 days after the date of the Auction (the "<u>Outside Backup Date</u>") or the closing of the transaction with the Prevailing Bidder (defined herein).

Following the Sale Hearing, if the Prevailing Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Prevailing Bidder (defined herein), the Debtor may designate the Backup Bidder (if designated, the first Backup Bidder) to be the new Prevailing Bidder (defined herein), and the Debtor will be authorized, but not required, to consummate the transaction or transactions with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Prevailing Bidder's deposit shall be forfeited to the Debtor. The deposit of the Backup Bidder shall be held by the Debtor until the earlier of 72 hours after (i) the closing of the transaction or transactions with the Prevailing Bidder (defined herein) and (ii) the Outside Backup Date.

## Additional Procedures

In addition to and not in lieu of any other provisions herein, the Debtor, with the consent of the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent with any of the provisions of the Bid Procedures Order or the Agreement. Such rules by way of example may provide that all Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

The Debtor and the Committee may, upon mutual agreement, subject to the terms of any cash collateral orders or debtor in possession financing orders in the chapter 11 cases, extend the Bid Deadline or the Auction, as determined, beyond the dates provided herein.  In the event of such an agreed-upon extension, the Debtor shall provide notice to the Notice Parties and any Qualified Bidders of such extension, any related time and location details with respect to same, and any consequent continuance of the Sale Hearing.

## Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, these chapter 11 cases, the Bid Procedures, the Agreement, the Auction, or the construction and enforcement of any Prevailing Bidder's (defined herein) purchase agreement.

### Sale Is as Is/Where Is

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its estate except to the extent set forth in the proposed binding term sheet or asset purchase agreement. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures.

### Free of Any and All Interests

Except as otherwise provided in the proposed binding term sheet or asset purchase agreement and subject to the approval of the Bankruptcy Court, all of Debtor's right, title, and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code section 363(f), with such Interests to attach to the net proceeds of the sale of the Assets.

### Closing the Auction

The Auction shall continue until there is only one Qualified Bid or combination of Qualified Bids for the Assets that the Debtor determines in its reasonable business judgment, after consultation with its advisors and professionals duly-appointed by the Bankruptcy Court herein and with the Committee, is the highest and best Qualified Bid or combination of Qualified Bids. Thereafter, the Debtor shall select one or more of such Qualified Bids, the combination of which produces the highest and best recovery to the estates, as the overall highest and best Qualified Bid or Qualified Bids (each such Bid a "*Prevailing Bid*," and each Bidder submitting such Prevailing Bid, a "*Prevailing Bidder*"). In making this decision, the Debtor shall consider the Bid Assessment Criteria.

The Auction shall close when each Prevailing Bidder for any such Assets submits fully-executed sale and transaction documents memorializing the terms of its respective Prevailing Bid.

Promptly following the Debtor's selection of the Prevailing Bid and the conclusion of the Auction, the Debtor shall announce the Prevailing Bid and Prevailing Bidder and shall file with the Bankruptcy Court notice of the Prevailing Bid and Prevailing Bidder.

The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

## No Expense Reimbursement

Pursuant to the Bid Procedures Order, no party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement, break up fee, termination fee or similar fee or payment.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither a Prevailing Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. The Good Faith Deposit of each Backup Bidder, if any, shall be returned to the respective Backup Bidder on the date that is the earlier of 72 hours after (i) the closing of the transaction with the Prevailing Bidder or Prevailing Bidders for the Assets and (ii) the Outside Backup Date. Upon return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Prevailing Bidder or Prevailing Bidders timely close their winning transactions, their respective Good Faith Deposits shall be credited toward their respective purchase prices.

## Sale Hearing

[Option 1 – Notice before Sale Hearing date is set]  The Court shall set a date for the Sale Hearing to occur after the close of the Auction.  Notice of that date shall be sent by the Debtor to any party that has previously executed a Confidentiality Agreement and received the Bid Procedures.

[Option 2 – Notice after Sale Hearing date is set]  The Sale Hearing shall be conducted by the Bankruptcy Court on _____, 2017 at [___:_0] [__].m. (Central Time), or on such other date as may be established by the Bankruptcy Court.

If the Prevailing Bidder fails to consummate an approved sale in accordance with the applicable purchase and sale agreement or such agreement is terminated, the Debtor shall be authorized, but not required, to deem the Backup Bid, as disclosed at the Sale Hearing, the Prevailing Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Backup Bid without further order of the Bankruptcy Court.